IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.A., by and through his | § | |
| parents and legal guardians, MICHELLE | § | |
| BETENBAUGH and KENNEY AROCHA; | § | |
| MICHELLE BETENBAUGH, individually; | § | |
| and KENNEY AROCHA, individually | § | CIVIL ACTION NO: |
| | § | |
| Plaintiffs. | § | |
| | § | |
| vs. | § | |
| | § | |
| NEEDVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT; | § | |
| | § | |
| Defendant. | § | |

**REDACTED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs, through counsel, bring this complaint against Defendant Needville Independent

School District ("NISD" or the "District") and allege the following:

1.      NISD has placed five-year-old A.A. in indefinite In-School Suspension ("ISS")

because he attends kindergarten with his hair in two long braids in accordance with his American

Indian religion, heritage and identity, thereby violating A.A.'s rights to free exercise of religion

under the First and Fourteenth Amendments, U.S. Const. amends. I, XIV § 1, and Texas'

Religious Freedom Restoration Act ("TRFRA"), Tex. Civ. Prac. & Rem. Code Ch. 110; A.A.'s

right to free expression under the First and Fourteenth Amendments, and his parents' rights to

raise him according to their American Indian religion, heritage and identity under the Fourteenth

Amendment.  This action seeks declaratory and injunctive relief against NISD pursuant to 42

U.S.C. § 1983 and Tex. Civ. Prac. & Rem. Code § 110.005, for the above violations.

1

2.      Plaintiffs have no plain, speedy, or adequate remedy at law other than the relief requested in this complaint.  Unless enjoined by this Court, NISD's discipline of A.A. will continue to impermissibly burden Plaintiffs' constitutional and statutory rights.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction pursuant to 28 U.S.C §§ 1331 and 1343 over Plaintiffs' causes of action under the Constitution of the United States and 42 U.S.C. § 1983, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff A.A.'s cause of action under TRFRA.  Declaratory and injunctive relief is authorized by 28 U.S.C. § 2201 and   § 2202, Texas Civ. Prac. & Rem. Code § 110.005(a), and Fed. R. Civ. P. 57 and 65.

4.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because all of the events giving rise to the claims made in this complaint occurred and will occur in this judicial district and because NISD is located in this district.

## PARTIES

5.      Plaintiff A.A. is a minor, aged five years old, who resides in Needville, Texas, within the boundaries of NISD, and is a kindergarten student at Needville Elementary School.

6.      Plaintiff Kenney Arocha is over the age of eighteen and resides in Needville, Texas, within the boundaries of NISD.  He brings this lawsuit individually, and on behalf of his son A.A..

7.      Plaintiff Michelle Betenbaugh is over the age of eighteen and resides in Needville, Texas, within the boundaries of NISD.  She brings this lawsuit individually, and on behalf of her son A.A..

8.     Defendant NISD is a political subdivision of the State of Texas and is responsible for providing public education to the children within its jurisdiction and for administering the laws and policies that govern schools within its jurisdiction, including Needville Elementary School. NISD and its Board of Trustees, officials, and employees acted under color of state law at all relevant times and for all relevant acts alleged herein.

## STATEMENT OF FACTS

9.     A.A. has two long braids of hair because he, like his father, is American Indian.  The braids are part of A.A.'s religious exercise and express his American Indian religion, heritage and identity.  NISD has conceded A.A.'s right to an exemption from their student dress code[1] (hereinafter the "Dress Code") because of his religious beliefs about long hair.  Nevertheless, NISD seeks to force A.A. to keep his 13-inch-long hair in a single "tightly woven" braid stuffed down his shirt at all times and to submit annually to the degrading process of re-proving his religious beliefs, with no certainty that they will be respected.  This policy is no exemption; it is a punishment.  It serves only to pressure A.A.—through shame, embarrassment, anxiety about being disciplined and physical discomfort—into resenting or abandoning the American Indian beliefs and practices his parents are teaching him.  Because A.A. refuses to hide his religion and identity as NISD's punitive policy requires, Needville Elementary School Principal Jeanna Sniffin has, since September 3, 2008, subjected him to the harshest form of discipline the law permits for children of his age:  segregation from his classmates in ISS.  *See* Tex. Educ. Code § 37.006(l).

---

[1] NISD's dress code prevents boys at Needville Elementary School from having hair "cover any part of the ear or touch the top of the standard collar in the back."  NISD Dress Code, *available at* http://classroom.needvilleisd.com/webs/nes/dress_code.htm (attached hereto as Ex. 1).  NISD interprets these rules as prohibiting long hair on boys.  *See* Email from Jeanna Sniffin to Michelle Betenbaugh (undated) *in* Level Three Appeal Notice 15 (Aug. 19, 2008) (attached hereto as Ex. 2).  The dress code also places additional restrictions on students' hair and attire.  *See* NISD Dress Code.   The term "Dress Code" is used herein to refer only to those provisions of NISD's dress code that prohibit A.A. from having two long braids, outside of his clothing, at school. Plaintiffs do not challenge the application of any other provision of the dress code to A.A.

**The Arocha Family's Experience**

10.     Kenney Arocha recalls that his grandfather and an uncle, both now deceased, told him as a child that he was Apache and began teaching him their American Indian beliefs and practices, including the belief that his hair should be kept long as a sacred symbol of his own life and that it should be cut short only to mark life-changing events such as the death of a loved one.

11.     Mr. Arocha had long hair as a child.  However, his mother had it cut when Mr. Arocha begin kindergarten in Richmond, Texas.  Mr. Arocha recalls that his first haircut was a painful experience because it went against what his grandfather and uncle had taught him about his hair.

12.     In addition to having his hair cut for school, Mr. Arocha's mother and others in the immediate family refused to acknowledge, and continue to deny, that they are descended from American Indians.  Instead, they claim Mexican ancestry.

13.     Because of his family's denial, genealogical information is scarce for Mr. Arocha. Like over 25% of individuals who identified themselves as American Indian or Alaska Native in the last census, Mr. Arocha is not currently affiliated with a specific tribe.  *See* Stella U. Ogunwole, U.S. Census Bureau, *The American Indian and Alaska Native Population:  2000* at 8, 10 tbl.4 (2002) *available at* http://www.census.gov/prod/ 2002pubs/c2kbr01-15.pdf.

14.     The Arocha family is not unusual.  Historically, many American Indians[2] were forced to conceal or abandon their culture and beliefs in order to protect themselves from persecution. *See* Decl. of Dr. James Riding In ¶¶ 2, 6 (attached hereto as Ex. 3).  Such actions are the heritage of a long and shameful history of persecution, discrimination and forced assimilation that

---

[2] The terms "American Indian," "Indian," and "Native American" refer herein to any indigenous person or group of the Americas.

American Indians, especially children, have faced since this nation's founding. *See* Riding In Decl. ¶¶ 4-7.

15.     Throughout the late nineteenth and early twentieth centuries, for example, the government subjected American Indians to a variety of harsh assimilationist policies including "the allotment of tribal land, criminalization of traditional Indian religious practices, promotion of Christian missions in Indian Country, and separation of young Indian children from their parents and traditional culture through the boarding school system."  Michael J. Simpson, *Accommodating Indian Religions:  The Proposed 1993 Amendment to the American Indian Religious Freedom Act*, 54 Mont. L. Rev. 19, 29-30 (1993); *see also* Riding In Decl. ¶¶ 4-6.

16.     Part of the culture and tradition the government worked so viciously to eradicate was a widespread belief, similar across a variety of American Indian groups, in the spiritual and cultural significance of hair.  *See* Riding In Decl. ¶¶ 2, 6.  For many American Indians, across various tribes, hair is regarded as the place of one's knowledge and soul; an extension of the physical being; and can symbolize maturity, marriage, hierarchy, mourning, or other representations during one's lifetime.  *See Warsoldier v. Woodford*, 418 F.3d 989, 991-92 (9th Cir. 2005); *Alabama & Coushatta v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F.Supp. 1319, 1324-25, 1329 (E.D. Tex. 1993); *Gallahan v. Hollyfield*, 516 F.Supp. 1004, 1006 (E.D. Va. 1981) *aff'd*, 670 F.2d 1345 (4th Cir. 1982).

17.     When Mr. Arocha met Ms. Betenbaugh, she encouraged him to reconnect with his American Indian heritage.  As a result, Mr. Arocha began working to understand and practice the fundamental lessons he was taught as a child about his American Indian religion, heritage and identity.  He began to grow the hair on the crown of his head long and has continued doing so for over a decade.  He customarily keeps his long hair in two braids.

18. As part of Mr. Arocha's ongoing research into his American Indian religion, heritage and identity, he had his DNA tested in 2006. The test results confirm that his DNA is consistent with American Indian ancestry. *See* GeneTree DNA Testing Center Report *in* Level Three Appeal Notice 36-39.

19. Mr. Arocha's and Ms. Betenbaugh's difficult and lengthy process of rediscovering and engaging with American Indian religion and culture is not unusual among American Indian descendants, and is referred to as "decolonization" in the academic literature. *See* Riding In Decl. ¶ 9. It is a "means of achieving cultural and individual healing" from the abuses described above, and is manifested by "[t]he wearing of long hair, reclaiming of spiritual traditions, and readoption of traditional values and beliefs." *Id.*

20. Mr. Arocha's commitment to living his American Indian religion, heritage and identity intensified when he learned that he would become a father. Before A.A. was born, Mr. Arocha and Ms. Betenbaugh made a decision to raise him according to this American Indian religion, heritage and identity so that he would know about and be proud of his ancestry. Mr. Arocha wanted to spare his son the painful experience, which he is still working to overcome, of having to assimilate and to live for years without following or fully understanding his American Indian beliefs and practices.

21. In accordance with his parents' teachings, A.A. has never had his thick, wavy hair cut. He customarily keeps it in two 13-inch-long braids, one on each side of his head. A.A.'s hair is important and special to him as a part of his American Indian religion, heritage and identity because, in his own words, it tells him how long he has been here.

**Plaintiffs' Extensive Efforts to Persuade NISD to Respect their American Indian Religion, Heritage and Identity**

22.     Ms. Betenbaugh's family purchased land in Needville Texas in October, 2007, a parcel of which was intended for Ms. Betenbaugh and Mr. Arocha.  The couple began making arrangements to build a home and small farm on the property and planned to relocate by the summer of 2008.  They received a deed to twelve acres of the property in May 2008.

23.     In anticipation of Plaintiffs' move to Needville, Ms. Betenbaugh emailed NISD secretary Linda Sweeney on November 6, 2007 to advise her that A.A. would be enrolling in kindergarten at Needville Elementary in the fall of 2008.  Ms. Betenbaugh's email provided notice about A.A.'s hair length,[3] and inquired what documentation would be required to ensure his right to keep his hair in accordance with this American Indian heritage would be respected. *See* Level Three Appeal Notice 16.  Ms. Sweeney never responded.

24.     On May 27, 2008, Ms. Betenbaugh emailed Principal Sniffin, again explaining A.A.'s American Indian heritage and inquiring as to how his long hair would be addressed.  Principal Sniffin responded by email:  "Our dress code in Needville does not allow boy's hair to touch their ears or go below their collar.  Long hair is not allowed." *See* Level Three Appeal Notice 16.

25.     On May 28, 2008, Ms. Betenbaugh emailed Superintendent Rhodes, repeating her request about A.A.'s hair.  *See* Level Three Appeal Notice 14-15.  Via email dated May 29, 2008, Superintendent Rhodes requested a meeting to discuss the issue.  *See* Email from Curtis Rhodes to Michelle Betenbaugh (May 29, 2008) (attached hereto as Ex. 4).

---

[3] Throughout their correspondence and discussions with NISD, Plaintiffs focused on A.A.'s religiously-motivated refusal to cut his hair.  It should come as no surprise that Plaintiffs did not address A.A.'s right to have two braids as opposed to one, or to keep his hair outside of his clothing as opposed to hidden beneath it, before the NISD Board's decision of August 20, 2008.  Plaintiffs naturally would not, and could not, have requested an exemption to NISD's policy requiring A.A. to wear a single braid, stuffed down his shirt, before that policy came into existence.

26.     Ms. Betenbaugh, Mr. Arocha, and A.A. met with Superintendent Rhodes and Principal Sniffin on June 9, 2008.  During this meeting, Superintendent Rhodes stated that A.A. would not be allowed to attend school with long hair without proof of a sincere religious belief. Plaintiffs explained Mr. Arocha's and A.A.'s American Indian religious beliefs and provided DNA test results supporting Mr. Arocha's, and by extension A.A.'s, American Indian ancestry.

27.     Despite this evidence, and notwithstanding state law prohibiting the placement of children under age six in alternative education programs, Tex. Educ. Code Ann. § 37.006(i), Superintendent Rhodes told Plaintiffs that A.A. would be placed in an "alternative school setting" if he attended school with long hair.  He also stated that the district would not allow exceptions to its Dress Code for any religious beliefs.  He advised Plaintiffs that they could take the issue up with NISD's Board, but that he already knew how it would go with the Board.

28.     On June 16, 2008, Superintendent Rhodes advised Ms. Betenbaugh of his final decision not to exempt A.A. from NISD's Dress Code by telephone and in writing.  *See* Level Three Appeal Notice 40-45.  During the telephone conversation, Ms. Betenbaugh again asked if the Dress Code would be applied to students of all religions, and Superintendent Rhodes responded that it applied to all students, implying that the school would not grant a religious exception under any circumstances.

29.     Superintendent Rhodes' decision letter of June 16, 2008 directed that his decision could be appealed to the NISD Board of Trustees, and enclosed NISD Board Policy FNG (Local) on student and parent grievances along with a Level Three Appeal Notice form.  Plaintiffs filed a timely appeal to the Board on June 27, 2008.  *See* Level Three Appeal Notice 27.  The Board appeal hearing was scheduled for the Board's regular meeting on July 16, 2008.

**NISD's Ongoing Efforts to Pressure A.A. to Hide or Abandon His American Indian Religion, Heritage and Identity**

30.     While they went through the motions of considering Plaintiffs' exemption request, NISD and its officials made little effort to conceal their true, impermissible intention of forcing A.A. to conform his appearance to that accepted in the Needville community.  Superintendent Rhodes explained, "A school district is a reflection of the community.  We've consistently been very conservatively dressed, very conservatively disciplined. It's no secret what our policy is: You'll cut your hair to the right point. You'll tuck in your shirt. You'll have a belt."  Paul Knight, *A Native American Family Fights Against Hair Length Rules*, Houston Press, July 10, 2008 (attached hereto as Ex. 5).  Superintendent Rhodes considered the Board "pretty solid, and they're proud of the Needville heritage we have here….There's a lot of school districts that have lost their discipline and all their beliefs. Needville's pretty tight about that, they're pretty tight about the traditions they have."  *Id.*   He complained that Plaintiffs "want[ed] to move in, yet they want to change this part to fit how they practice or what they believe in."  *Id.*  To those who would question NISD's policies, Rhodes remarked, "no one is asking you to move to Needville and have these opinions invoked on you."  *Id.*

31.     These sentiments were echoed by the public at Plaintiffs' first Board appeal hearing. One attendee told the Board, "I'm just afraid that if the school district decides to give in and accept, to change the rules for these parents, that other problems are going to come in the future." Another did not "want to see any policies change that may deteriorate the, the tradition and policies that have made this school district so desired by so many." A third elaborated:  "We don't have a lot of the problems here that they do in larger school districts, and I am thinking that if we allow this—I'm going to go with the word belief—that it's going to set a dangerous precedent, that it's going to just be one thing after another, after another.  I've worked in law

enforcement for a long time to see that, what some of these things can result in.… I really hope that you decide to keep the dress code the way it is now, that I don't think the wishes of the entire community, that *our* beliefs, should be superseded by someone else's. I don't think that that's fair, that one should absolutely control *the whole*.… You're an elected board, and I hope that y'all will go ahead and try and, you know, stand strong for, for Needville the way it is now." Audio CD:  Meeting of the Needville ISD Board of Trustees (July 16, 2008) (emphasis in verbal remarks).

**NISD's Attempt to Run Out the Clock**

32.     Neither Superintendent Rhodes nor any other agent of the District had previously informed Plaintiffs that their exemption request was premature.  Nevertheless, in his presentation at Plaintiffs' July 16 Board appeal hearing, Superintendent Rhodes recommended that the Board deny Plaintiffs' appeal as premature, among other reasons because A.A. had not yet taken up residence in Needville, been enrolled in NISD, or been subjected to its Dress Code.  *Id.*

33.     NISD has not identified any law or policy that prevents it from deciding a prospective student's exemption request prior to enrollment.  To the contrary, Superintendent Rhodes and Principal Sniffin both exercised their authority to decide Plaintiffs' exemption request prior to A.A.'s enrollment.  Furthermore, Superintendent Rhodes initially instructed Plaintiffs of their right to appeal his decision under Board Policy FNG (Local).  He then failed to notify Plaintiffs of his erroneous conclusion that they had no such right after all.  Instead, he allowed Plaintiffs to wait a full month from the date of his decision, as the first day of school drew nearer, for an appeal hearing.

34.     After the July 16, 2008 Board appeal hearing, the NISD Board voted unanimously to deny Plaintiffs' appeal as premature.  *Id.*  Plaintiffs were instructed that they could begin the administrative review process anew only after A.A. was enrolled in the district.

35.     Although Plaintiffs were frustrated with NISD's last minute non-decision, they were undeterred in their conviction to ensure A.A. would be allowed to practice and express his American Indian religion, heritage, and identity in school.  Accordingly, they retained undersigned counsel, who contacted NISD by letter of July 29, 2008 to assert the constitutional and statutory bases for A.A.'s right to be exempted from NISD's Dress Code.  *See* Level Three Appeal Notice 23-26.

36.     Through counsel, NISD responded that it would expedite administrative review of a renewed exemption request if Plaintiffs enrolled A.A. by August 14, 2008.  *See id.* 20-22.  The response indicated that Superintendent Rhodes could decide a renewed exemption request by Friday, August 15, 2008, permitting time for an appeal, if necessary, at the Board's next meeting on August 20, 2008.  *Id.*

37.     NISD also requested that Plaintiffs complete a detailed exemption request form, provided by their counsel the following day.  Contrary to well-established constitutional precedent, *see, e.g., Frazee v. Ill. Dept. of Emp. Security*, 489 U.S. 829, 831 (1989), the form purported to require documentary evidence of Plaintiffs' membership in "a recognized church or religious organization whose tenets and practices conflict" with NISD's policies. *See* Level III Appeal Notice 17-19.

38.     Plaintiffs had already provided sufficient evidence to support a religious exemption for A.A.'s in their previous meetings with Superintendent Rhodes, Principal Sniffin and the Board.  Nevertheless, in an effort to resolve this dispute amicably, undersigned counsel informed

NISD's counsel by letter dated August 14, 2008 that A.A. had been enrolled in Needville Elementary School and submitted a completed exemption request form. *See id.* 10-19.

39.     The letter also noted that an appeal to the Board, if necessary, would be heard only three business days before classes began.  As a result, Plaintiffs could forego filing suit during the expedited administrative review only if NISD provided written assurance that A.A. would not be disciplined before this dispute could be considered by a court.  Specifically, Plaintiffs asked NISD to provide written assurance that if A.A. was not granted an exemption by August 20, 2008, NISD would defer disciplining him until the earlier of a court's decision on injunctive relief or September 22, 2008. *See id.* 12-13.

40.     Despite NISD's proposed timeline for administrative review, Superintendent Rhodes delayed his decision once again to deny Plaintiffs' exemption request until the afternoon of Monday, August 18. *See id.* 7-9.  After undersigned counsel twice more inquired whether NISD would provide the requested assurance against discipline, NISD's attorney Rhonda Crass responded by telephone and email, "yes." Ms. Crass agreed to provide written confirmation the following day. *See* Email exchange between Lisa Graybill, Fleming Terrell, Rhonda Crass and Kristin Foster (Aug. 18, 2008) (attached hereto as Ex. 6).

41.     In reliance on the unconditional assurance provided in Ms. Crass' email and telephone call, Plaintiffs forbore on filing a claim for injunctive relief that could have prevented the very harm A.A. is now suffering at NISD's hands.  Instead, on August 19, 2008, Plaintiffs proceeded to file an appeal of the Superintendent's decision. *See* Level Three Appeal Notice.

42.     After Plaintiffs had submitted their appeal, Ms. Crass provided a written assurance that incorrectly stated that Plaintiffs had agreed to braid A.A.'s hair "and affix it to the top of his head in such a manner as it does not fall below the collar pursuant to the dress code" until the

resolution of this dispute.  *See* Letter from Rhonda Crass to Lisa Graybill and Fleming Terrell (Aug. 19, 2008) (attached hereto as Ex. 7).  Counsel promptly corrected this error by informing Ms. Crass that Plaintiffs had made no such agreement.  *See* Email from Fleming Terrell to Rhonda Crass, Kristin Foster and Lisa Graybill (Aug. 19, 2008) (attached hereto as Ex. 8).

43.     In a further attempt to resolve this dispute amicably, Plaintiffs offered to and did meet with Superintendent Rhodes and NISD's attorney Kristin Foster immediately before the August 20, 2008 appeal hearing.  At the meeting, Plaintiffs again explained A.A.'s American Indian religion and identity, and provided intimate personal details in support of their sincerity.

**NISD's Adoption of an "Exemption" Meant to Punish A.A.**

44.     At no time during or prior to the meeting between Plaintiffs and Superintendent Rhodes did NISD or its counsel propose or inquire into the adequacy of an "exemption" that would require A.A. to put his hair in a single braid and stuff the braid down his shirt. Nevertheless, Superintendent Rhodes proceeded from the meeting with Plaintiffs to the appeal hearing, where he read aloud a prepared recommendation that the Board either deny an exemption altogether, or adopt a policy that "at school and all school events, both at home and away, to include school trips on any school bus, [A.A.] wear his hair in a tightly woven single braid down his back with the hair behind his ears, out of his eyes and the braid tucked into the collar of his shirt."  Transcript of Level III Hearing 17-18 (Aug. 20, 2008) (attached hereto as Ex. 9)  Superintendent Rhodes further recommended that A.A. be required to apply annually for a religious exemption from the Dress Code.  *Id.* at 17.

45.     The NISD Board decided that it could not deny an exemption altogether, thus recognizing A.A.'s right to a religious exemption from NISD's Dress Code "because of his religious belief."  *Id.* at 21.  NISD Board member Kim Janke made clear in moving to grant an

"exemption" for A.A., however, that the Board did not wish to permit A.A. to practice and express his American Indian religion or identity, and would do so only to the extent the law required. *Id.* at 19-20 ("Although I disagree with the law presented in this case and understand and support why Mr. Rhodes made the decision that he made, I move that the Board…grant A.A. an exemption to the grooming code with the following provisions: [describing punitive policy].").  Accordingly, instead of granting the straightforward exemption Plaintiffs requested, the Board voted unanimously to adopt the punitive policy Superintendent Rhodes recommended. *See id.* at 20-21 (voting to adopt punitive policy and recognizing that it "modified the relief [Plaintiffs] requested").

46.     Although it does not directly require A.A. to cut his hair, NISD's punitive policy places a substantial burden on A.A.'s free exercise of his religious beliefs concerning hair as well as his right to express his American Indian religion, heritage, and identity.   Forcing a five-year-old child to stuff a 13-inch-long braid of thick, wavy hair down his shirt and ensure that all of his hair stays "tightly woven" and under his shirt during a typical kindergartener's day of activities is a punishment.  It is degrading and embarrassing; extremely uncomfortable especially in the Houston area's very hot climate; and impractical, resulting in anxiety for A.A. about facing discipline should his hair stray from the braid or from under his shirt.  It serves no purpose other than to make A.A. ashamed or resentful of his American Indian religion, heritage, and identity.

47.     NISD's action is particularly degrading in light of the underlying history of forced assimilation and persecution faced American Indians faced for centuries in this country.  The education system was used as a key tool in the government's efforts to force American Indians to abandon their culture and traditions.  *See* Lorie M. Graham, *The Past Never Vanishes:  A*

14

*Contextual Critique of the Existing Indian Family Doctrine*, 23 Am. Indian L. Rev. 1, 10-21 (1998).  This tactic took advantage of American Indian children as "the most vulnerable to change and least able to resist it."  *Id.* at 10 (internal quotation marks omitted).  Accordingly, from the 1860s well into the twentieth century, American Indian children were systematically removed from their homes and families and sent to government-funded boarding schools where they were forbidden to "speak their native languages, practice their native religions, or dress or wear their hair in traditional ways."  Simpson, *Accommodating Indian Religions*, *supra*, at 29; *see also* Riding In Decl. ¶¶ 4-6.  By forcing each American Indian student to conform to Anglo society's standards, these schools aimed to "kill the Indian in him, and save the man."  Simpson, *Accommodating Indian Religions*, *supra*, at 29.  These efforts culminated, by the 1970s, in one-third or more of all American Indian children being removed from their families and placed in non-native households or institutions.  Graham, *The Past Never Vanishes*, *supra*, at 24.

48.     NISD's insistence that its punitive policy is an "exemption" is a transparent attempt to avoid this suit and to back out of the previous assurances against discipline on which Plaintiffs relied.  Indeed, NISD acknowledges that by following the punitive policy, A.A. would be "in full compliance with the dress code as his hair would remain out of the eyes, would not cover any part of the ear or touch the top of the standard collar in the back as mandated by the NISD dress code and applied to all NISD students."  Letter from Kristin Foster to Lisa Graybill and Fleming Terrell (Sep. 3, 2008) (attached hereto as Ex. 10).  NISD cannot have it both ways.

**NISD's Needlessly Harsh Punishment of A.A.**

49.     After the Board's decision, undersigned counsel sought to confirm that NISD would abide by its previous assurance to defer discipline, since the Board's unanticipated maneuver denied Plaintiffs the exemption they requested.  After close of business on the last weekday

before school began, NISD communicated through counsel that it would not honor its assurance, on grounds that A.A. had been granted an "exemption." *See* Letter from Rhonda Crass to Lisa Graybill and Fleming Terrell (Aug. 22, 2008) (attached hereto as Ex. 11).

50.     In accordance with his American Indian religion and identity, A.A. has attended kindergarten at Needville Elementary School since August 25, 2008 with his hair in two braids on each side of his head, outside of his clothing.

51.     On the first day of school, Principal Sniffin sent a letter home with A.A. acknowledging that he "will not be required to cut his hair because of his religious beliefs."  Her letter stated that all students would have a grace period to familiarize themselves with the Dress Code until September 2, 2008, but after that, A.A. would be disciplined for violating the punitive policy NISD adopted for him.  Letter from Jeanna Sniffin to Michelle Betenbaugh (Aug. 25, 2008) (attached hereto as Ex. 12).

52.     A.A. remained in his kindergarten class, with his hair in two braids on each side of his head, outside of his clothing, for five days without incident.  After undersigned counsel requested that NISD reconsider its decision to discipline A.A. before a court had an opportunity to consider injunctive relief, NISD's counsel Ms. Crass indicated her understanding that discipline for Dress Code violations was carried out in a tiered process, beginning with a mark on the student's chart and going through several other steps before a student was suspended. After conferring with NISD, however, Ms. Crass advised that A.A.'s continued exercise of his rights to practice and express his American Indian religion and identity "will result in ISS and notification to parents until compliance."  Email from Rhonda Crass to Fleming Terrell (Sep. 1, 2008) (attached hereto as Ex. 13).

53.     True to this promise, A.A. was placed immediately into ISS on September 3, 2008, his first day back to school after the Labor Day holiday.  Principal Sniffin called Mrs. Betenbaugh early that morning to inform her of A.A.'s placement in ISS.

54.     On information and belief, A.A.'s ISS was initially supervised by a physical education teacher or coach.  At a school open house on September 4, 2008, A.A.'s kindergarten teacher, Mrs. Chilek, informed Ms. Betenbaugh that NISD had hired a retired teacher named Mrs. Scherer to supervise A.A.'s ISS beginning with the week of September 8, 2008.

55.     A.A. continues to suffer the effects of his indefinite segregation from his kindergarten class.  Upon arriving at his classroom every morning, A.A. is escorted away from his classmates and into another room where he sits with his ISS teacher for the rest of the school day.  A.A. had no opportunity for physical exercise or play in ISS until the resumption of classes after Hurricane Ike on September 18, 2008, when, due to a request from Plaintiffs' counsel and in accordance with Tex. Educ. Code § 28.002(l), NISD began permitting A.A. to spend thirty minutes on the playground each day.  While the playground time is an improvement, A.A. still spends the time apart from his kindergarten classmates.  A.A. endures this segregation for over seven hours every school day with no opportunity to engage in group learning or social play with other children during class or on the playground.  He is aware that he is in ISS because of the long braids he has in accordance with his American Indian religion, heritage, and identity:  in his own words, he says he is in ISS because of his hair.

56.     On information and belief, the only other student to have shared A.A.'s classroom since September 3, 2008 was another kindergartener who was placed in ISS for three days for threatening to shoot another child.  Unlike the child who threatened violence, and despite state

law restricting suspensions to a maximum of three days each, Tex. Educ. Code § 37.005(b),

A.A.'s term in ISS continues indefinitely.

57.     This social and educational isolation is particularly detrimental to the development of

a five-year-old child.  When Ms. Betenbaugh talks to A.A. about school while tucking him in

each night, he often cries and tells her he is sad to be separated from his classmates.   In addition

to the stigma and isolation associated with this form of punishment, suspension can irreparably

harm a child's academic performance, increasing the risk of failure, dropping out, and

incarceration.  *See* Johanna Wald and Daniel J. Losen, *Defining and Redirecting A School to

Prison Pipeline, New Directions for Youth Development*, No. 99, 11, 13 (Fall 2003) (attached

hereto as Ex. 14); Advancement Project and The Civil Rights Project at Harvard University,

*Opportunities Suspended: The Devastating Consequences of Zero Tolerance and School

Discipline Policies*, 8, 11 (2000) *available at* http://eric.ed.gov.  Added to these detrimental

effects is the serious impact on A.A.'s emotional and psychological health caused by NISD's

efforts to make him feel that his American Indian beliefs and identity are somehow wrong,

shameful, or bad.

58.     A.A.'s alternative to suffering this punishment is to suffer a different kind of

punishment by being forced to wear his hair in a single thick braid stuffed down his shirt at all

times, and to justify his religious beliefs every year to the very authorities that have already made

their skepticism and disapproval clear.  Doing so would be degrading, embarrassing, and

physically uncomfortable, to say nothing of the distraction, anxiety, and impracticality inherent

in requiring a five-year-old to keep a thick, foot-long braid of hair stuffed down his shirt during

the normal activities of a kindergartener's day.

59.     On September 4, 2008, Plaintiff Ms. Betenbaugh formally notified NISD that the district's punishment of A.A. for not complying with the punitive policy substantially burdens his religious exercise in violation of TRFRA, Tex. Civ. Prac. & Rem. Code § 110.006.  *See* Letter from Michelle Betenbaugh to Curtis Rhodes (Sep. 4, 2008) (attached hereto as Ex. 15). Due to NISD's repeated delay and extension of its administrative review process and the adoption of the punitive policy less than two months ago, this notice could not be provided sixty days prior to the initiation of the instant suit.  *See* Tex. Civ. Prac. & Rem. Code § 110.006(b). After receiving this notice, NISD indicated it would provide no accommodation.  Letter from Kristin Foster to Michelle Betenbaugh (Sep. 9, 2008) (attached hereto as Ex. 16).

60.     A.A. should not have to choose one or the other of these punishments as the price of practicing and expressing his American Indian religion and identity.  His parents fear that under either punitive alternative, he will come to be ashamed of his American Indian identity, to resent his religious practice of not cutting his hair, and ultimately may even wish to abandon the beliefs that Mr. Arocha and Ms. Betenbaugh have exercised their constitutional and human rights as parents to teach him.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

FREE EXERCISE CLAUSE OF THE
1ST AMENDMENT TO THE U.S. CONSTITUTION

61.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

62.     NISD's punitive policy is not a neutral rule of general applicability.  It is a targeted policy specifically designed to inflict degradation, embarrassment, anxiety, and physical

19

discomfort on A.A. for expressing and practicing his American Indian heritage, identity and religious beliefs.

63.    NISD's adoption and enforcement of this punitive policy substantially burdens A.A.'s free exercise of his religious beliefs.

64.    NISD's punitive policy does not further any compelling governmental interest, nor is it the least restrictive means of, or rationally related to, achieving NISD's asserted interests of "teach[ing] hygiene, instill[ing] discipline, prevent[ing] disruption, avoid[ing] safety hazards and assert[ing] authority."  *See* NISD Dress Code.

<u>SECOND CAUSE OF ACTION</u>

RELIGIOUS FREEDOM RESTORATION ACT
TEXAS CIVIL PRACTICE & REMEDIES CODE § 110.001, *ET SEQ.*

65.    Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

66.    NISD's punitive policy places a substantial burden on Plaintiff A.A.'s free exercise of his religious beliefs, as set forth above.  Because it imposes this burden, NISD's punitive policy is not a reasonable accommodation of A.A.'s sincerely held religious beliefs.

67.    NISD's punitive policy does not further any compelling governmental interest, nor is it the least restrictive means of, or rationally related to, achieving NISD's asserted interests in hygiene, discipline, preventing disruptions, safety and authority.

<u>THIRD CAUSE OF ACTION</u>

FREE EXPRESSION CLAUSE OF THE
1ST AMENDMENT TO THE U.S. CONSTITUTION

68.    Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

69.     Plaintiff A.A. has two long braids not only in accordance with his religious beliefs, but also as an outward expression of his adherence to those beliefs, his ethnic heritage, and his very identity as an American Indian.

70.     There is a great likelihood that this particularized message will be understood by those observing A.A.'s long braids.

71.     NISD's punitive policy suppresses A.A.'s expression by forcing him literally to stuff his American Indian religion, heritage and identity—represented by his two long braids—down his shirt and out of sight at all times.

72.     NISD's punitive policy does not further its asserted interests in hygiene, discipline, preventing disruptions, safety and authority.

73.     NISD's punitive policy restricts A.A.'s First Amendment activities far more than is necessary to facilitate their asserted interests in hygiene, discipline, preventing disruptions, safety and authority.

<u>FOURTH CAUSE OF ACTION</u>

DUE PROCESS CLAUSE OF THE
14TH AMENDMENT TO THE U.S. CONSTITUTION

74.     Plaintiffs incorporate all of the allegations contained in the previous paragraphs of this complaint as though fully set forth herein.

75.     Ms. Betenbaugh and Mr. Arocha have exercised the constitutional and human right that every parent has to raise their child according to the religious beliefs and cultural identity they espouse.  They made this choice so that A.A. will not suffer the trauma of being made to assimilate and to deny or forget his American Indian heritage and identity.

21

76.     Unchecked, NISD's enforcement of its punitive policy will likely cause A.A. to be ashamed of, resent or even abandon the beliefs and identity that Ms. Betenbaugh and Mr. Arocha have worked so hard to teach him in his first five years.

77.     NISD's punitive policy does not bear more than a reasonable relation to their stated interests in hygiene, discipline, preventing disruptions, safety and authority.

78.     NISD's adoption and enforcement of its punitive policy deprives Plaintiffs Michelle Betenbaugh and Kenney Arocha of their liberty interest, secured by the Substantive Due Process Clause of the Fourteenth Amendment, in directing the upbringing of their son.

<u>ATTORNEYS' FEES AND COSTS</u>

Plaintiffs are entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and Texas Civ. Prac. & Rem. Code § 110.005(a)(4).

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request the following relief:

a.      A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that NISD's adoption and enforcement of its punitive policy for A.A.'s hair violates the First and Fourteenth Amendment to the United States Constitution and Texas' RFRA as set forth herein;

b.      A temporary restraining order and a preliminary and permanent injunction pursuant to Fed. R. Civ. P. 65 prohibiting NISD and its officials, employees, agents, assigns and all those working in concert with them, from disciplining A.A. in any way that violates his rights to free exercise of religion or free expression, including by disciplining him for attending school or school events, either at home or away, including the bus, with his hair in two long braids, one on either side of his head, worn outside of his clothing;

c.     An order reversing the disciplinary action already taken against A.A. for attending school with his hair in two long braids, one on either side of his head, worn outside of his clothing;

d.     An order awarding Plaintiffs costs and attorneys' fees, pursuant to the statutes cited herein, 42 U.S.C. § 1988, Texas Civ. Prac. & Rem. Code § 110.005(a)(4), and any other applicable law;

e.     Such other and further relief as this Court deems just and proper.


Dated:  October 2, 2008                    Respectfully submitted,


                                   _____/s/_____
                                   Lisa Graybill
                                   *Attorney-in-Charge*
                                   Texas Bar No. 24054454
                                   Southern District Bar No. 784838
                                   lgraybill@aclutx.org

                                   Fleming Terrell
                                   Texas Bar No. 24063031
                                   Southern District Bar No. 933603
                                   fterrell@aclutx.org

                                   AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION OF TEXAS
                                   P.O. Box 12905
                                   Austin, TX 78711
                                   Phone:  (512) 478-7300, ext. 116 and 128
                                   Fax:  (512) 478-7303

                                   Daniel Mach
                                   District of Columbia Bar No.461652
                                   dmach@aclu.org
                                   AMERICAN CIVIL LIBERTIES UNION
                                          FOUNDATION
                                   PROGRAM ON FREEDOM OF RELIGION
                                          AND BELIEF
                                   915 15th Street, NW

Washington, DC 20005
Phone:  (202) 675-2330
Fax:  (202) 546-0738
*Pro hac vice* application pending

**Attorneys for Plaintiffs**

PRIVILEGED & CONFIDENTIAL                    Final Draft - October 1, 2008
ATTORNEY WORK PRODUCT

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A██████ A██████, by and through his<br>parents and legal guardians, MICHELLE<br>BETENBAUGH and KENNEY AROCHA,<br>MICHELLE BETENBAUGH, individually<br>and KENNEY AROCHA, individually<br><br>    Plaintiffs.<br><br>vs.<br><br>THE NEEDVILLE INDEPENDENT<br>SCHOOL DISTRICT,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO: |

## VERIFICATION OF COMPLAINT

I, Michelle Betenbaugh, resident of the State of Texas, am a Plaintiff in the above titled action. I verify that I have read the Complaint filed in this case on October 1, 2008 and declare under penalty of perjury under the laws of the United States of America that the applicable foregoing facts in the Complaint are correct and true to the best of my knowledge.

Michelle Betenbaugh

I, Kenney Arocha, resident of the State of Texas, am a Plaintiff in the above titled action. I verify that I have read the Complaint filed in this case on October 1, 2008 and declare under penalty of perjury under the laws of the United States of America that the applicable foregoing facts in the Complaint are correct and true to the best of my knowledge.

Kenney Arocha

Dated:  October 2, 2008                     Respectfully submitted,

Lisa Graybill
*Attorney-in-Charge*

1

Texas Bar No. 24054454
Southern District Bar No. 784838
lgraybill@aclutx.org

Fleming Terrell
Texas Bar No. 24063031
Southern District Bar No. 933603
fterrell@aclutx.org

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION OF TEXAS
P.O. Box 12905
Austin, TX 78711
Phone:  (512) 478-7300, ext. 116 and 128
Fax:  (512) 478-7303

Daniel Mach
District of Columbia Bar No.461652
dmach@aclu.org
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
PROGRAM ON FREEDOM OF RELIGION
    AND BELIEF
915 15th Street, NW
Washington, DC 20005
Phone:  (202) 675-2330
Fax:  (202) 546-0738
*Pro hac vice* application pending

**Attorneys for Plaintiffs**

2

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I certify that on October 8, 2008 a true copy of the foregoing document was filed in the above-entitled action with the Clerk of the Court using the ECF system, which will send notification of this filing to the following counsel of record:

Jeffrey Lee Hoffman
Henslee Fowler et al
3200 Southwest Freeway, Ste 1200
Houston, TX 77027
Tel: 713-552-1693
Fax: 281-342-7001
Email: jhoffman@hensleeschwartz.com

/s/
Lisa Graybill