*A.A. et al. v. Needville Independent School District*
**No. 4:08-cv-02934**
**Index of Exhibits to Verified Complaint**

| | Exhibit |
|---|---|
| **1** | NISD Dress Code |
| **2** | Level Three Appeal Notice |
| **3** | Declaration of Dr. James Riding In |
| **4** | Email from Curtis Rhodes to Michelle Betenbaugh (May 29, 2008) |
| **5** | Paul Knight, *A Native American Family Fights Against Hair Length Rules*, Houston Press (July 10, 2008) |
| **6** | Email exchange between Lisa Graybill, Fleming Terrell, Rhonda Crass and Kristin Foster (Aug. 18, 2008) |
| **7** | Letter from Rhonda Crass to Lisa Graybill and F. Terrell (Aug. 19, 2008) |
| **8** | Email from Fleming Terrell to Rhonda Crass, Kristin Foster and Lisa Graybill (Aug. 19, 2008) |
| **9** | Transcript of Level III Hearing |
| **10** | Letter from Kristin Foster to Lisa Graybill and Fleming Terrell (Sep. 3, 2008) |
| **11** | Letter from Rhonda Crass to Lisa Graybill and Fleming Terrell (Aug. 22, 2008) |
| **12** | Letter from Jeanna Sniffin to Michelle Betenbaugh (Aug. 25, 2008) |
| **13** | Email from Rhonda Crass to Fleming Terrell (Sep. 1, 2008) |
| **14** | Johanna Wald and Daniel J. Losen, *Defining and Redirecting A School to Prison Pipeline, New Directions for Youth Development*, No. 99, 11, 13 (Fall 2003) |
| **15** | Letter from Michelle Betenbaugh to Curtis Rhodes (Sep. 4, 2008) |
| **16** | Letter from Kristin Foster to Michelle Betenbaugh (Sep. 9, 2008) |

# EXHIBIT 1

Needville Elementary School – Dress Code

10/1/08 11:00 AM



» Home   | » Teacher Web Pages  | » Administration  | » Contact Us  | » District Site

Wednesday October 1, 2008

 Make a Selection

- Home
- 2008 2009 School Supply List
- 2008 2009 SCHOOL CALENDAR
- 2008-2009 School Year Procedures
- AEIS Report
- NES Faculty and Staff
- Registration
- Dress Code
- NES Calendar
- From the Nurse
- Important Health News
- Library
- Cafeteria
- Bluejays of the Month
- August 2008
- Support Our School
- PTA

## DRESS CODE



The district's dress code is established to teach hygiene, instill discipline, prevent disruption, avoid safety hazards, and assert authority.

Since the dress and the personal appearance of students are important factors in maintenance of good discipline on the school campus, the school district has formulated definite policies in regard to what is acceptable and what is not acceptable in the manner of dress and personal appearance.

Students shall come to school looking clean and neat, wearing clothing, and exhibiting grooming that will not be a health and/or safety hazard to the student or others. The district prohibits pictures, emblems, or writings on clothing that are lewd, offensive, vulgar, obscene, or imply profanity; or that depict or advertises alcohol/tobacco substances prohibited under policy FNCF (L); also prohibited is any dress or grooming that in the principal's judgment, may reasonably be expected to interfere with normal school operations.

## DRESS

1. Tops must cover the shoulders, back, and midriff at all times. Tank tops and spaghetti straps are not permitted.
2. The neckline should be designed so the wearer is not indecently exposed.
3. Any shirt below mid-thigh length must be tucked in. No shirt longer than shorts may be worn.
4. Shoes shall be worn at all times. Thongs or beach shoes (strap between toes), backless shoes, or shoes with cleats shall not be considered appropriate.
5. Socks that cover the foot and have a minimum height to the ankle must be worn with any type of shoes or sandals.
6. Hats, caps, and sunshades are not to be worn inside any building.
7. Students may wear dresses, slacks, jeans, skirts, or shorts. All clothing must be hemmed. Any tight fitting shorts or pants are prohibited. Due to various classroom,

recess, and physical education activities, it is suggested that shorts be worn under girls' dresses/skirts.
8. No holes allowed in pants (must be repaired or patched)
9. Loose fitting "low-rider" shorts, jeans, or oversized clothes are not allowed.
10. Swimming trunks are not allowed.
11. Boys are prohibited from wearing earrings during school hours or during school related activities.
12. Extreme dress of any nature, considered to be disruptive of the educational process, shall be in violation of the dress code.
13. No tattoos will be allowed.
14. Other attached body jewelry or studs of any kind such as nose studs, nose rings, tongue studs, eyebrow rings, or any other attached body jewelry items are not allowed with the exception of girls' earrings.

The principal, in connection with the sponsor, coach, or other person in charge of an extracurricular activity, may regulate the dress and grooming of students who participate in the activity.

## HAIR
1. Hair shall be clean, well groomed, and out of the eyes.
2. Boys' hair shall not cover any part of the ear or touch the top of the standard collar in the back. Hair shall not be excessively full (not to exceed two inches in fullness).
3. Designs are not permitted in the hair.
4. One straight line for parting purposes is permitted.
5. Sideburns shall be neatly trimmed and be no longer than the middle of the ear lobe.
6. Extreme hairdos of any nature that would be disruptive shall be in violation of the dress code.
7. No tufts or tails are permitted

## VIOLATIONS
IF A STUDENT'S APPAREL IS CONSIDERED INAPPROPRIATE, they will be furnished a set of clothes to wear during the school day. Students will NOT be allowed to call home for additional clothing items during the school day. For persistent offenses, students will be subject to assignment in I.S.S., suspension, or assignment to the Needville ISD D.A.E.P. Failure to comply when out of dress code, when given the opportunity to correct the matter, will be considered insubordination.

©2006 Needville ISD - All rights reserved.



Powered by
*netStartClass*

# EXHIBIT 2

From:Missouri City Police Dept.                    08/19/2008 07:39      #815 P.001/001

  08-18-08;02:50PM;                                       ;                # 4/ 4

### LEVEL THREE APPEAL NOTICE

To appeal a Level Two decision, or the lack of a timely response after a Level Two conference, please fill
out this form completely and submit it by hand delivery, fax, or U.S. mail to the Superintendent or designee
within the time established in FNG (LOCAL).  Appeals will be heard in accordance with FNG (LEGAL) and
(LOCAL) or any exceptions outlined therein.

1. Name A‗‗‗‗ A‗‗‗‗ (student); Michelle Betenbaugh, Kenney Arocha (parents)

2. Address   16916 Brumbelow Rd.

          Needville, TX 77461

   Telephone Number ( 832 ) 330-9406

3. If you will be represented in voicing your appeal, please identify the person representing you.

   Name/Title Lisa Graybill, Legal Director; Fleming Terrell, Staff Attorney

   Address ACLU Foundation of Texas; 611 S. Congress Ave., Ste. 320

          Austin, TX 78704

   Telephone Number ( 512 ) 478-7300 ext. 116 (Graybill) and 128 (Terrell)

4. To whom did you present your appeal at Level Two? Supt. Rhodes via counsel at Henslee
                                                      Request for exemption submitted to
                                                      Schwartz, LLP
   Date of conference none, per August 7, 2008 letter from counsel at Henslee
                                                                     Schwartz, LLP
   Date you received a response to the Level Two conference  August 18, 2008

5. Please explain specifically how you disagree with the outcome at Level Two.

       see attached

6. Do you want the Board to hear this appeal in open session?  yes

   Please be aware that the Texas Open Meetings Act may prevent the Board from granting a request for
   open session.

7. Attach a copy of your original complaint and any documentation submitted at Level One and a
   copy of your Level Two appeal notice.

8. Attach a copy of the Level Two response being appealed, if applicable.

Student's or Parent's signature /M. /B___     Michelle Betenbaugh

Signature of Student's or Parent's representative FC__        Fleming Terrell

Date of filing August 19, 2008

Level Three Appeal Notice
Arocha/Betenbaugh
August 19, 2008

**5.  Please explain specifically how you disagree with the outcome at Level Two.**

The First and Fourteenth Amendments to the United States Constitution, and Texas'
Religious Freedom Restoration Act ("RFRA"), restrict Needville ISD's ability to
substantially burden A████'s free exercise of his sincerely held religious beliefs.  *See,
e.g.*, *Chailfoux v. New Caney Indep. Sch. Dist.*, 976 F.Supp. 659, 670 (S.D. Tex. 1997);
Tex. Civ. Prac. & Rem. Code Ann. § 110.003.   Nevertheless, without concluding that we
failed to show Needville ISD's hair policies[1] impose such a burden on A████,
Superintendent Rhodes issued a second Level Two decision denying our request for a
religious exemption from the hair policies.[2]  We disagree with this outcome for two
reasons:  first, Superintendent Rhodes failed to recognize that we submitted more than
enough evidence to support exemption request; second, Superintendent Rhodes applied a
constitutionally impermissible standard to the extent he required evidence of membership
in a religious organization or Native American tribe as a prerequisite for a religious
exemption.

> ***a.   Superintendent Rhodes failed to recognize that we submitted more than enough
> evidence to support the exemption request***

Contrary to what the Level Two decision states, we clearly articulated the religious belief
upon which our exemption request was based and provided ample evidence to support
A████'s sincere belief in and adherence to the claimed religious belief.  As we explained,
A████ has been raised with the belief that his long hair is "a sacred symbol of his life and
experience in this world, and that it should be cut only to mark major life events such as
the death of a loved one." Request for Exemption at 1.  The courts' repeated recognition
that Native American beliefs similar to A████'s are religious, discussed below, eliminates
any lingering doubt that A████s belief could be "purely secular," *Frazee*, 489 U.S. at
833, or a matter of mere personal preference. We provided the following evidence in
additional support to our claim that A████ sincerely believes in and adheres to religious
restrictions on cutting his hair:

> ○   **A████, like his father, has Native American ancestry.** *See* Request for
>    Exemption at 1.

Neither A████ nor his father, Kenney, is a recognized member of a particular Native
American tribe.  However, Kenney's DNA has been tested to reveal that he—and

---

[1] Included in our reference to the hair policies are all district, campus and/or classroom policies that would
require A████ to cut his hair in order to attend or participate in classes, athletics, student clubs or
organizations, or any other school-sponsored activities or events, including Needville ISD's and Needville
Elementary's dress codes.
[2] As detailed further in our attorneys' letter of July 29, 2008 to Needville ISD, attached hereto, application
of the hair policies to A████ will also violate his right to free expression under the First and Fourteenth
Amendments to the United States Constitution, as well as Michelle Betenbaugh's and Kenney Arocha's
rights to direct A████'s religious upbringing under the Fourteenth Amendment to the United States
Constitution.  *See, e.g.*, *Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.*, 817
F.Supp. 1319 (E.D. Tex. 1993), remanded after federal RFRA enacted, 20 F.3d 469 (5th Cir. 1994).

Level Three Appeal Notice
Arocha/Betenbaugh
August 19, 2008

therefore A████—is biologically descended from Native American peoples.[3]  Kenney's
grandfather and uncle, both deceased, taught him about his Native American heritage,
culture and beliefs when he was growing up.   Kenney recalls being told as a child that he
was Apache, and now believes, on the basis of historical research, that he is likely
descended from the Lipan subgroup of the Apache.[4]  Kenney hopes to apply for
membership in the Lipan Apache tribe once he has finished compiling relevant
genealogical information.[5]

- **A████ is being raised to follow, and sincerely believes in, Native
  American religious beliefs including the restriction on cutting hair.**  *See*
  Request for Exemption at 1.

- **A████ has never had his hair cut, in adherence to his religious beliefs.**
  *See* Request for Exemption at 2.

- **A████'s father also adheres to Native American religious beliefs that his
  hair should be worn long.[6]**  *See* Request for Exemption at 2.

As our exemption request stated, Mr. Arocha shares A████'s ancestry, heritage and
beliefs.  He bases his current beliefs and teachings to A████ on what he remembers
learning from his grandfather and other elders, and he continues to learn more about these
beliefs from outside sources such as Native American groups.  Kenney's hair was cut for
the first time when he enrolled in kindergarten, an experience he recalls as painful.
Kenney has not cut the top layer of his hair in over ten years in observance of his
religious beliefs.  He wears this long hair in braids, like A████.  So sincere is Kenney in
his belief that has he risked firing rather than cut his braids to comply with an employer's
hair-length policy.  His termination was cancelled only when a third party submitted a
complaint to the Equal Employment Opportunity Commission on his behalf.  Similarly,
when Kenney underwent three separate brain surgeries in 2005, he prevailed upon his
doctors not to cut his braids because of his religious beliefs.  His wife, Michelle, helped
him to maintain his hair in braids during his month-long stay in the hospital in order to
avoid having them cut.

---

[3] A copy of the DNA report was included with the Level Three Appeal Notice, filed on June 25, 2008, and
attached hereto.

[4] *See generally* Opler, Morris E., *Myths and legends of the Lipan Apache Indians*, Memoirs of the
American Folk-Lore Society, Vol. 36, Preface, *available at*
http://www.lipanapachetribe.com/History/history_opler.html.

[5] A████ and his family have been offered membership in the Oklevueha Native American Church as a
result of publicity surrounding their attempt to obtain a religious exemption from Needville ISD.

[6] While parents need not hold the same religious beliefs they choose to teach their children, we agree with
the Level Two decision that evidence of one or both parents' adherence to the same or similar beliefs as
those they teach their child can lend additional support to the child's sincerity of belief.  The Level Two
decision inexplicably and improperly disregarded the evidence provided in our exemption request about
Kenney Arocha's adherence to the religious beliefs in question. *See* Request for Exemption at 2.

2

Level Three Appeal Notice
Arocha/Betenbaugh
August 19, 2008

- **Multiple federal courts have recognized Native American beliefs concerning hair length as religious within the meaning of the First Amendment.** *See* Request for Exemption at 3; *infra* at 4 (collecting cases).

- **We have invested substantial time and effort, over a period of several months, in identifying and complying with NISD's procedure to obtain an exemption to the hair policies in order to protect A███'s right, among others, freely to exercise his religious beliefs and our rights to direct his religious upbringing.** *See* Letter of August 14, 2008 from F. Terrell to R. Crass re: Adriel Arocha (attached).

The evidence listed above is more than adequate to support the religious basis for our exemption request, and the Level Two decision does not suggest that we have provided it falsely. We therefore disagree with the outcome of the Level Two decision denying our exemption request.

> ### *b. Superintendent Rhodes applied a constitutionally impermissible standard to the extent he required evidence of membership in a religious organization or Native American tribe as a prerequisite for a religious exemption.*

As the above discussion makes clear, the Level Two decision is incorrect when it states that we did not respond to "NISD's request for documentation or support of A███'s membership and/or adherence to the religion upon which this exemption is allegedly based." To the contrary, the request we refused was to identify "*a recognized church or religious organization* whose tenets and practices conflict" with the hair policies, and "provide *documentation* supporting [our] membership to [the specified] *church or organization*." Request for Exemption Form at 1. As the Level Two decision acknowledges, NISD cannot require that the religious basis for our exemption request "meet any organizational or doctrinal test." *See, e.g.*, *Frazee v. Ill. Dept. of Emp. Security*, 489 U.S. 829, 831 (1989) (rejecting proposition that a religious belief "must be found in a tenet or dogma of an established religious sect" to receive First Amendment protection) (internal quotation marks omitted); *Sequoyah v. Tennessee Valley Auth.*, 620 F.2d 1159, 1163 (6th Cir.), *cert. denied* 449 U.S. 953 (1980) ("[t]here is no requirement that a religion meet any organizational or doctrinal test" for First Amendment protection). Instead, A███'s noncompliance with the hair policies is protected because it is motivated by "an honest conviction that [cutting his hair is] forbidden by his religion," regardless of whether that religion is "acceptable, logical, consistent, or comprehensible to others." *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714-15 (1981).

The Level Two decision also implies, again incorrectly, that A███ is required to claim membership in a specific tribe that endorses his beliefs about hair in order to be granted an exemption. Requiring tribal affiliation for First Amendment or RFRA protection is no different that requiring membership in a church or other religious organization. While membership "would simplify the problem of identifying sincerely held religious beliefs," *Frazee*, 489 U.S. at 834, it is not a necessary precondition for the right freely to exercise

3

4

Level Three Appeal Notice
Arocha/Betenbaugh
August 19, 2008

a religion based on Native American beliefs. *See, e.g., Mosier v. Maynard*, 937 F.2d 1521, 1523 (10th Cir. 1991) ("Merely because [a First Amendment] plaintiff is not a member of the Cherokee nation or the Native American worship group at the prison does not mean that his belief [concerning hair length] is insincere."). Moreover, the Native American free exercise cases to which the Level Two decision refers make clear that similar religious beliefs concerning hair length are *not* particular to a few isolated tribes, but are held by broad spectrum of Native American individuals. *See State v. Whitaker*, No. F-06-011, 2007 WL 625931 at *5 (Ohio App. 6 Dist. 2007) ("Courts across the United States have recognized that refraining from cutting one's hair is a central tenet of Native American spiritual beliefs.") (collecting cases concerning multiple tribes' beliefs); *see also, e.g., Pollock v. Marshall*, 845 F.2d 656 (6th Cir. 1998) (Lakota); *Mosier v. Maynard*, 937 F.2d 1521 (unaffiliated Cherokee); *Iron Eyes v. Henry* 907 F.2d 810, 813 (8th Cir. 1990) (Sioux); *Gallahan v. Hollyfield*, 516 F.Supp. 1004 (E.D. Va. 1981) (Cherokee), *aff'd*, 670 F.2d 1345 (4th Cir. 1982); *Teterud v. Burns*, 522 F.2d 357 (8th Cir. 1975) (Cree); *Alabama & Coushatta Tribes*, 817 F.Supp. 1319 (Alabama & Coushatta).

To the extent the Level Two decision reflects a standard under which our religious exemption request cannot be granted without documentation of membership in a recognized religious group and/or Native American tribe, it fails to comply with the law under the First and Fourteenth Amendments and Texas' Religious Freedom Restoration Act. We therefore disagree with the outcome of the Level Two decision denying our exemption request.

4

08-18-08;02:50PM;                                               # 1/ 4



# Needville Independent
# School District

## Fax Cover Sheet

Visit our Website:
http://www.needvilleisd.com

P.O. Box 412
16227 Highway 36 South
Needville, TX  77461
Phone  979-793-4308
Fax      979-793-3823

To _Fleming Terrell_____   Date _8/18/08_____
_____512 478-7303_____

From _Curtis Rhodes_____

Number of pages, including cover page___4_____

Subject__A██████  A._____

08-18-08;02:50PM;                                                              ;                          # 2/  4



**J A Y S**

# Needville
# Independent
# School
# District

**16227 HIGHWAY 36 • P.O. BOX 412 • NEEDVILLE, TEXAS 77461 • 979-793-4308 • FAX: 979-793-3823**

August 18, 2008

Fleming Terrell                              Via email and facsimile: (512) 478-7303
Staff Attorney
ACLU Foundation of Texas
P. O. Box 12905
Austin, TX 78711-2905

RE: A████ A.

Dear Ms. Terrell:

We received your August 14, 2008 correspondence in which you reiterate your clients'
request for an exemption to the Needville ISD grooming and dress code and ask for a
prompt decision as to the exemption request in time for an appeal to be heard and
decided at the August 20, 2008 regularly scheduled Board of Trustees meeting.

Please accept this correspondence as written notice of my decision regarding your
clients' requested exemption.   Your exemption request form was received and
reviewed, along with the additional documentation enclosed in your August 14, 2008
correspondence.   In response to NISD's request for documentation or support for
A████s membership and/or adherence to the religion upon which this exemption is
allegedly based, you stated that no documentation is required.  Our attorney's have
advised us that there is no requirement that a claimed religion meet any organizational
or doctrinal test in order to merit First Amendment protection, but that we are rightfully
permitted to ask that A████ supply support for the contention that he sincerely believes
in and adheres to this claimed religious belief and be able to express what the claimed
religious belief is as well as be able to distinguish this from a purely personal moral
choice.

In response to NISD's request that A████ state the religious basis of the requested
exemption, you replied that A████ "has a sincerely held religious belief-as do many
Native Americans- that his long hair is...an expression of his ancestry and heritage...."
We are aware that certain Native American tribes do hold a religious belief surrounding
one's hair, however, the mere statement that "many Native Americans" subscribe to this
belief is not sufficient to merit an exemption for A████  No where in the exemption
request does A████ claim a certain tribal heritage, nor is it clear whether that particular
tribe or heritage subscribes to a religious belief centered around the cutting of one's

**REACHING FOR NEW HEIGHTS OF EXCELLENCE!**

Elementary School        Intermediate School        Middle School        Junior High School        High School
979-793-4241             979-793-5300               979-793-3027         979-793-4250              979-793-4158

7

08-18-08;02:50PM;                                      ;                    #  3/  4

hair. In cases where a religious exemption has been granted regarding Native American hair length, evidence has been presented that shows the existence and importance of beliefs regarding hair length and its symbolism within the particular Native American group as well as evidence regarding the individuals' adherence to said teachings and religious beliefs. No such evidence has been presented here and as such, there is no evidence that can be considered along with your request.

Your claim that "a parent's or guardian's practice is not directly relevant to the sincerity of a student's religious belief," might be true if we were dealing with an older child. However, because we are dealing specifically with a student whose age is merely five (5) years old in this case, the parents' adherence to such claimed religious practices and beliefs is most certainly relevant if for no other reason than to support your claim that A███ is being brought up and raised in adherence to certain allegedly religious teachings by the choice of his parents.

For the above stated reasons, your request for an exemption is denied. In the event you desire an appeal to the Board of Trustees, I am attaching a Level III Grievance form for you to complete. Normally, we would not hear the matter until the following regular meeting; however, I am aware that we are in the process of trying to expedite this matter in order to be prepared for the beginning of school. As you are certainly aware, there is a regularly scheduled Board of Trustees meeting set for Wednesday, August 20, 2008 at 7:00 p.m. This issue is currently posted on the agenda and should you and/or your clients wish to be heard on this issue, the Board will hear your Level III Grievance on the matter of A███'s requested exemption from the grooming code on that evening. Please return the Level III Grievance form to me via fax no later than 5:00 p.m. on Tuesday, August 19, 2008.

Should you need clarification or additional information, please contact our attorney's at Henslee Schwartz, Rhonda Crass at 817-229-6722 or Kristen Foster, at 713-552-1693,

Very truly yours,

Curtis Rhodes, Superintendent

Cc:    Rhonda Crass— via email
       Beth Briscoe – via email
       Jeanna Sniffen – via email
       Kristen Foster – via email
       Michelle Betenbaugh- via email

8

08-18-08;02:50PM;                                          ;                    #  4/  4

## LEVEL THREE APPEAL NOTICE

To appeal a Level Two decision, or the lack of a timely response after a Level Two conference, please fill out this form completely and submit it by hand delivery, fax, or U.S. mail to the Superintendent or designee within the time established in FNG (LOCAL). Appeals will be heard in accordance with FNG (LEGAL) and (LOCAL) or any exceptions outlined therein.

1. Name_____

2. Address_____

   _____

   Telephone Number (_____) _____

3. If you will be represented in voicing your appeal, please identify the person representing you.

   Name/Title_____

   Address_____

   _____

   Telephone Number (_____) _____

4. To whom did you present your appeal at Level Two?_____

   Date of conference_____

   Date you received a response to the Level Two conference_____

5. Please explain specifically how you disagree with the outcome at Level Two.

   _____

   _____

6. Do you want the Board to hear this appeal in open session? _____

   Please be aware that the Texas Open Meetings Act may prevent the Board from granting a request for open session.

7. Attach a copy of your original complaint and any documentation submitted at Level One and a copy of your Level Two appeal notice.

8. Attach a copy of the Level Two response being appealed, if applicable.

Student's or Parent's signature_____

Signature of Student's or Parent's representative_____

Date of filing_____

9

 

Via FedEx Tracking Number: 854625439390
Via email to: rcrass@hensleeschwartz.com

August 14, 2008

Rhonda Crass
Henslee Schwartz, LLP
306 W. 7th Street, Suite 1045
Ft. Worth, TX 76102

      Re: A▆▆▆ A▆▆▆▆

Dear Ms. Crass:

Thank you for your August 7th telephone call and August 8th letter concerning
A▆▆▆ A▆▆▆▆'s right to an exemption from Needville Independent School
District's ("NISD") and Needville Elementary School's policies on boys' hair
length ("hair policies"). As I discussed with you last Wednesday, our clients,
Michelle Betenbaugh and Kenney Arocha, are eager to resolve this matter so
that their son, A▆▆▆, can begin kindergarten without fear of discipline. We are
pleased that NISD is also interested in a prompt resolution.

Exemption requests

As a preliminary matter, I want to clarify two factual issues that arose during our
discussion last Wednesday. Specifically, you told me that our clients initially
gave Principal Sniffin and Superintendent Rhodes no reason for their request to
keep Adriel's hair long. You also told me that our clients requested that NISD
change the hair policies altogether, but never requested that A▆▆▆ be granted an
exemption from the hair policies. Neither statement is correct.

The enclosed correspondence makes clear that Ms. Betenbaugh has repeatedly
requested permission for A▆▆▆ to attend school without complying with the hair
policies (*i.e.*, that he be exempted), and explained that her request was made to
accommodate A▆▆▆'s and his father's Native American heritage and religious
beliefs.[1] Superintendent Rhodes apparently understood Ms. Betenbaugh's

---

[1] For example, via email dated November 6, 2007, Ms. Betenbaugh informed NISD secretary
Lynn Sweeney over eight months ago that Adriel "is of [N]ative [A]merican descent and has long

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ▪ AUSTIN, TX 78711-2905 ▪ T/512.478.7300 ▪ F/512.478.7303
WWW.ACLUTX.ORG

 

correspondence as an exemption request since he formally decided, by letter dated June 16, 2008, "to uphold the dress code currently adopted by Needville Independent School District *in relation to your son's hair length*." (emphasis added).

While there can be no question that our clients have already requested an exemption for A█████ I understand that NISD will treat my letter of July 29, 2008 as a new request for an exemption. To further ensure prompt resolution of this matter, we enclose a completed Request for Exemption form, which your firm provided to our clients for the first time on August 8, 2008. We expect that the contents this form will be treated as an educational record subject to the confidentiality requirements of NISD Board Policies FL (Legal) and FL (Local) and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

<u>Enrollment status</u>

We are aware of no statute, regulation, or Board Policy that prohibits NISD from deciding a prospective student's eligibility for exemption from the hair policies prior to his or her enrollment. To the contrary, Superintendent Rhodes issued a formal decision on our clients' initial exemption request without reference to A████s enrollment status. Our clients were not informed that NISD considered their exemption request premature until after they filed an appeal under Board Policy FNG (Local), as directed in Superintendent Rhodes' decision.

Although enrollment is not a prerequisite for an exemption decision, our clients nonetheless moved to enroll A████ as quickly as possible after the Board of Trustees announced it would not consider a pre-enrollment exemption request. Ms. Betenbaugh delivered all enrollment forms and supporting documentation to Needville Elementary School on August 13, 2008, at which time the school representative who received the materials confirmed that A████ is enrolled.[2] Per the timeline set out in your letter of August 8th, we expect Superintendent Rhodes

---

hair," and asked what documentation of his heritage the school would require. On May 27, 2008, she informed Principal Sniffin that Adriel is of Native American descent and wears "long hair in accordance with [his] heritage," and asked how A████'s hair length would be addressed. On May 29, 2008, she informed Superintendent Rhodes of A████'s Native American descent, that he wore long hair in accordance with his and his father's religious beliefs, and asked to be informed "as soon as possible if my son will be allowed to attend school with his long hair."

[2] Ms. Betenbaugh requested documentary confirmation of A████'s enrollment but was informed that no such documentation was available.

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ▫ AUSTIN, TX  78711-2905 ▫ T/512.478.7300 ▫ F/512.478.7303
WWW.ACLUTX.ORG ▫◄▓▓►

 

promptly to decide our clients' renewed exemption request in time for an appeal under Board Policy FNG (Local), if necessary, to be heard and decided at the August 20, 2008 Board of Trustees meeting.

Media attention

As you know, NISD's failure, thus far, to grant A███'s request for a religious exemption from its hair policies has received considerable attention from the local and national media. Without commenting on the impact, if any, of media attention on the educational environment at Needville Elementary School, we assure you that we and our clients are focused on ensuring A███'s first day of school is like any other child's. It is therefore our sincere hope that this matter will be resolved amicably before that day. We cannot prevent the press from reporting on this issue of their own initiative, but we think it is unlikely that the press will focus on this situation as long as the parties are negotiating in good faith according to the timeline set out above and subject to the assurance requested below.

Requested assurance

NISD is required to admit A███ under Texas Education Code § 25.001(b)(1), and our clients have repeatedly requested, and provided factual support, for A███ to be exempted from the hair policies on the basis of his and his father's Native American heritage and religious beliefs. As discussed more fully in my letter of July 29, 2008, NISD's continued failure to grant an exemption constitutes an imminent threat of injury to our clients' rights under the First and Fourteenth Amendments to the United States Constitution and Texas' Religious Freedom Restoration Act. Our clients are entitled to seek immediate injunctive relief without waiting for NISD to consider their renewed exemption request. *See, e.g. Patsy v. Bd. of Regents*, 457 U.S. 496, 516 (1982) (no exhaustion requirement under 42 U.S.C. § 1983); Texas Civ. Practice & Rem. Code § 110.006(b).

Because we would prefer to resolve this matter without litigation, our clients are willing to delay filing suit until after August 20, 2008 in order to permit NISD to decide their renewed exemption request on the timeline discussed above. Because school begins a mere three business days later, we can commit to this delay only if NISD provides written assurance that if NISD does not grant A███ an exemption by August 20, 2008, none of its officials, administrators, teachers or agents will discipline A███ or otherwise treat him differently from other

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 • AUSTIN, TX 78711-2905 • T/512.478.7300 • F/512.478.7303
WWW.ACLUTX.ORG •⎯⎯•

 

Needville Elementary School students on account of his noncompliance with the hair policies prior to the earlier of (1) a district court's denial of our clients' motion for a preliminary injunction, or (2) September 22, 2008.  In the absence of such written assurance, we will take whatever additional action we determine is necessary in consultation with our clients to secure their rights under the law.

Thank you again for contacting me last week.  I will look forward to your continued cooperation in resolving this matter, and may be reached via telephone at (512) 478-7300, extension 128, via email at fterrell@aclutx.org,  or via fax at (512) 478-7303.


Sincerely,


Lisa Graybill
Legal Director
ACLU Foundation of Texas


Fleming Terrell
Staff Attorney
ACLU Foundation of Texas


cc:     Kristen Zingaro Foster
        Henslee Schwartz LLP
        3200 S.W. Freeway, Suite 1200
        Houston, TX 77027
        via email to kfoster@hensleeschwartz.com

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ▪ AUSTIN, TX  78711-2905 ▪ T/512.478.7300 ▪ F/512.478.7303
WWW.ACLUTX.ORG

----- Forwarded by Michelle Betenbaugh/MOCTYDOM on 06/19/2008 12:14 PM -----

**From:** Michelle Betenbaugh [mailto:MBetenbaugh@missouricitytx.gov]
**Sent:** Thursday, May 29, 2008 10:43 AM
**To:** rhodesc@needvilleisd.com
**Subject:** Native American students and long hair

Hello, my family is moving to Needville soon and our five year old son will be enrolling in the elementary school. He is Native American and has long hair in accordance with his father's beliefs. This is a part of their religion and is a right protected under the American Indian Religious Freedom Act. I have contacted Jeanna Sniffin by email about this and she has stated that his long hair is not permitted. I have also contacted the Texas branch of the ACLU in reference to this since it is a violation of my son's rights to freedom of expression and religion.

I don't want to cause a fuss, I only want my son to be allowed to attend public school like everyone else. We keep his hair clean and neatly braided so it is not bothersome to anyone. He is an intelligent and well spoken child and is eager to start school and make new friends. The length of his hair is no more distracting than that of a girl's hair. If a Sikh boy were to enroll in one of your schools, would you require him to remove his traditional headcovering and cut his hair also? How about a child of the Rastafarian belief system? What about yarmulukes on Jewish boys? Head scarves on Muslim girls? My son's cultural identity is no less important than that of children of any other culture and his rights are just as protected as theirs.

Please reconsider your school districts dress code policy. I doubt my son is the first Native American child to enroll in Needville ISD and I'm sure he won't be the last either. I realize Needville is a small rural community but as more neighborhoods pop up and suburbia crawls closer, you will start to notice more and more students of different cultures enrolling. It would be best to prepare yourselves now and revise certain policies so your schools are more welcoming to future students.

Here is a link to get you started, you may want to send it to your teaching staff as well. It is a good primer for how schools can be more culturally sensitive towards American Indians:

http://www.racismagainstindians.org/

You may also use the search application of the ACLU website to find instances where other schools have changed their policies regarding hair length, color and styles.As a product of the Texas public school systems, I found it fascinating myself.

http://www.aclu.org

Please let me know as soon as possible if my son will be allowed to attend school with his long hair. I'd really rather not get a lawyer involved since I am a very private person

14

and would prefer not to be the focus of the next obnoxious media story. Ideally, my son will just be allowed to go to school like everyone else without being blocked from any activities.

Thank you,
Michelle Betenbaugh
832-330-9406

---

--- On Wed, 5/28/08, Michelle Sinched <*getsinched@yahoo.com*> wrote:
From: Michelle Sinched <getsinched@yahoo.com>
Subject: Re: FW: Kindergarten enrollment
To: "JEANNA SNIFFIN" <SNIFFINJ@needvilleisd.com>
Date: Wednesday, May 28, 2008, 10:40 AM

Ok, thank you for the information. Are you familiar with the American Indian Religous Freedom Act?

Michelle Betenbaugh

*JEANNA SNIFFIN <SNIFFINJ@needvilleisd.com>* wrote:

**Ms. Batenbaugh,**
   **You will need to wait until you move to Needville to enroll your son. Our dress code in Needville does not allow boy's hair to touch their ears or go below their collar. Long hair is not allowed.**
**J. Sniffin**

**From:** Michelle Sinched [mailto:getsinched@yahoo.com]
**Sent:** Tue 5/27/2008 12:04 PM
**To:** sniffenj@needvilleisd.com
**Subject:** Kindergarten enrollment

Hello, my family is moving to Needville in about two months. Our son will be entering kindergarten so we need to enroll him at the elementary school. Since we have not moved yet, we don't have any proof of residency yet. What do we need to do to get him enrolled?

Also, my husband and therefore my son are of native american descent. Both of them have long hair in accordance with their heritage. Will this a problem and how will it be addressed?

Thank you,
Michelle Betenbaugh
832-330-9406

---

—— Forwarded by Michelle Betenbaugh/MOCTYDOM on 06/19/2008 10:32 AM —–-

**Michelle Betenbaugh/MOCTYDOM**

11/06/2007 03:45 PM

To sweenyl@needvilleisd.com

cc

Subject Policy question

My 4 year old son will start school next year at Needville Elementary. He is of native american descent and has long hair.  Will this be a problem and what kind of documentation will be needed to prove his heritage?

Thank you,

Michelle Betenbaugh

# Needville ISD
# Request for Exemption

Date Received by School:_____

Student Name:_A███ D███ A███_____ Date of Birth: · 04/29/09

Parent or Guardian:__Michelle Betenbaugh; Kenney Arocha_____

Address:_____16916 Brumbelow Rd., Needville, TX_____

Home Phone:___979-553-3745____ Cell or Work Phone:__832-330-9406___

Child's Grade:__Kindergarten___ Campus:  Needville Elementary School_____

☐ I am adherent or a member of _____, a recognized church or religious organization whose tenets and practices conflict with the Needville ISD Dress or Grooming Code.

Please see ANSWER TO #1, below.

State the specific provision from which you are requesting an exemption:
We repeat our request, made on several previous occasions, that Needville ISD exempt A███ from all district, campus, and/or classroom policies that would require him to cut his hair in order to attend or participate in classes, athletics, student clubs or organizations, or any other school-sponsored activities or events.  This request includes but is not limited to provisions 1 and 5 under "Hair," contained in the Dress Code for Kindergarten included in A███'s enrollment packet; and provisions 2, 5 and 7 under "Hair," contained in the district dress code posted on Needville Elementary School's website at classroom.needvilleisd.com/webs/nes/dress_code.htm.
State the religious basis of why you should be granted an exemption:

A███ has a sincerely held religious belief—as do many Native Americans—that his long hair is not only an expression of his ancestry and heritage, but also a sacred symbol of his life and experience in this world, and that it should be cut only to mark major life events such as the death of a loved one. A███ has learned these religious beliefs from his father, who shares the same ancestry, heritage and beliefs.

Please  provide documentation supporting your membership to the church or religious organization listed above:

No membership documentation is required under the First Amendment or Texas' Religious Freedom Restoration Act.  *See, e.g., Thomas*, 450 U.S. at 714; *Sequoyah*, 620 F.2d at 1163; *Alabama & Coushatta Tribes*, 817 F.Supp. at 1333; Tex. Civ. Practice & Rem. Code § 110.001(a)(1).

**Does the church or religious organization listed above share the religious basis upon which you request this exemption?  (If no, please explain.)**

Not applicable.

**Has the student ever had to comply with a similar provision, from which exemption is sought, in order  to participate in activities such as girl scouts, boy scouts, non-school organized sports teams, school-sponsored sports teams, band, choir, drill team?  (If so, please list and describe.)**

A█████'s hair has never been cut.

**Has the parent(s)/guardian(s) ever had to comply with a similar provision, from which exemption is sought, in order to participate in activities,  to work at a business, at church, or at a church-related activity?  (If so, please list and describe.)**

A parent's or guardian's practice is not directly relevant to the sincerity of a student's religious belief.  We note, however, that Mr. Arocha was required to cut his hair when he enrolled in kindergarten, and does not want A█████ to go through the same painful experience.  More recently, Mr. Arocha was threatened with termination for refusing to comply with an employer's hair length policy.  The threat was rescinded after a third party contacted the Equal Employment Opportunity Commission on Mr. Arocha's behalf.

**Please include any additional information that you believe would be helpful in establishing a sincerely held religious belief for purposes of obtaining an exemption to the dress or grooming code.**

Courts have recognized beliefs similar to A█████'s as religious beliefs within the meaning of the First Amendment. *See, e.g., Teterud v. Burns*, 522 F.2d 357 (8th Cir. 1975) (Native American inmate's belief that hair should be kept long was sincerely held religious belief under First Amendment); *Gallahan v. Hollyfield*, 516 F.Supp. 1004 (E.D. Va. 1981), *aff'd*, 670 F.2d 1345 (4th Cir. 1982) (same); *Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F.Supp. 1319 (E.D. Tex. 1993) (Native American students' belief that hair should be kept long was sincerely held religious belief under First Amendment).

**ANSWER TO #1:** A█████ is Native American. Membership in or adherence to the beliefs of a recognized and/or organized religion is not required for protection under the First Amendment or Texas' Religious Freedom Restoration Act. *See, e.g., Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 714 (1981); *Sequoyah v. Tennessee Valley Auth.*, 620 F.2d 1159, 1163 (6th Cir.), *cert. denied* 449 U.S. 953 (1980); *Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F.Supp. 1319, 1333 (E.D. Tex. 1993), remanded after federal RFRA enacted, 20 F.3d 469 (5th Cir. 1994); Tex. Civ. Practice & Rem. Code § 110.001(a)(1).



**HENSLEE SCHWARTZ** LLP

A T T O R N E Y S   A T   L A W

306 W. 7TH STREET
SUITE 1045
FT. WORTH, TEXAS 76102          AUSTIN ● DALLAS ● FT. WORTH ● HOUSTON ● SAN ANTONIO

PHONE: (817)810-0717
TOLL FREE: (866) 810-0717
FAX: (817) 810-0811

RHONDA CRASS
Equity Partner
rcrass@hensleeschwartz.com

August 7, 2008

Fleming Terrell
Staff Attorney
ACLU Foundation of Texas
P. O. Box 12905
Austin, TX 78711-2905

Via email without attachments
Via LoneStar Overnight with attachments

RE:  A████A.

Dear Ms. Terrell:

I enjoyed the opportunity to visit with you by phone on Wednesday afternoon.  I am glad that you are as interested as the district in reaching a resolution to this matter.  As we discussed, Ms. Bentenbaugh and Mr. Arocha's grievance was to have the school change their dress code and grooming policy with regard to hair length.  Needville ISD has not received a request from the parents requesting that their son, A████, be exempted from the hair code.  As a school district we cannot make a ruling on any requested exemption until the child is enrolled in the district.  I do believe that we both agree that a media circus on the first day of school would be disruptive to the educational environment.

I know the goal of the parents is for A████ to attend Needville ISD and not be subject to the hair and grooming code.  His parents would like for him to be granted a religious exemption to the hair code so that he would not have to comply nor be disciplined for his non-compliance.  As we discussed, we need A████ enrolled before any decision can be made or action taken by the District.  In order to avoid a circus on the first day of school, I am enclosing for you an enrollment packet from Needville ISD.  There are a number of pages included, many of which are for information.  Of the documents enclosed, your client will need to fill out the following forms and provide the following documentation:

1.  Registration Card (Green Form)
2.  Kindergarten At-Risk Information Sheet (Yellow Half-Sheet)
3.  Kindergarten Parent Questionnaire (Blue Sheet)
4.  Needville ISD Home Language Survey (white sheet)

WWW.HENSLEESCHWARTZ.COM

HENSLEE SCHWARTZ LLP

August 7, 2008
Page 2

5. A certified copy of the child's birth certificate. The District does not accept hospital birth certificates.
6. A copy of the child's shot records.
7. A copy of the child's social security card.
8. A copy of the parent's Electric bill. (If the parent does not have an electric bill in his or her name, the parent will need a copy of the electric bill where they reside and one of the Proof of Residence in Needville ISD forms completed.)

The remainder of the forms are for informational purposes and do not need to be completed. A child is not considered enrolled for the purposes of the Texas Education Agency until all of the forms and required documentation are completed. Once completed these forms should be delivered to the Elementary School Campus so that the child can be enrolled and a classroom assigned.

Since the purpose of your letter is to expedite the request for exemption to the hair code, your client will need to fill out an exemption request form. I will have my associate, Kristen Foster, provide one to your office under separate cover. I believe we can have a ruling for you by Friday, August 15, 2008, assuming your child is enrolled by August 14th. We will assume that if the request is denied, you will appeal this matter to the Board of Trustees. There will be a meeting on August 20, 2008 where an appeal would be heard by the Board of Trustees. I am aware after our conversation that if the board of trustees denies your request for an exemption based on religion, you will immediately proceed to court to try to obtain an injunction to ensure that A███ is not disciplined for non-compliance with the dress code.

Assuming that A███ is granted an exemption prior to the beginning of school, I would anticipate that your client will not encourage the press to be present on the first day of school nor will she make any derogatory remarks to the press regarding Needville ISD. The granting of an exemption from the hair code by administration or the board of trustees should resolve the matter completely. Since this is not only the first day of school for A███ but for all kindergarten students at Needville Elementary, we would like this to be a positive experience for everyone.

Assuming that A███ is not granted an exemption by the Superintendent or in an appeal to the Board of Trustees at the meeting on August 20, 2008, it is my understanding that you would promptly move your request before a Court seeking injunctive relief to the compliance requirement. If your client is willing to promptly enroll the child so that the District may quickly move forward to a decision, the District, by and through its Superintendent, has agreed not to inflict any punishment on the child for non-compliance with the hair code until after September 22, 2008 which is really the first four weeks of school which would allow us ample time to have a court resolve the matter if your client promptly enrolls the child as she has indicated she would do. However, as a condition to the discipline reprieve, your client must refrain from any further contact with the media (as will Needville ISD) other than to say the parties are attempting to resolve the matter without any further comment and will agree to have the child's hair either

HENSLEE SCHWARTZ LLP

August 7, 2008
Page 3

braided, secured by a rubber band, or fashioned in a manner that it is not free flowing during the grace period until such time as the parties can reach resolution.

A▆▆▆ has and always will be welcomed as a student at Needville ISD when his parents choose to enroll him. He has never been denied enrollment in the school nor will he ever be as long as he meets the residency requirements dictated in Board Policy. It is imperative that the student be enrolled by the parent in order for the District to make a decision regarding the exemption request. Delay on the part of the parent in enrolling the child will only jeopardize the timeline for resolving this matter before A▆▆▆ begins school.

Thank you again for speaking with me on Wednesday. I know that everyone is anxious to put the matter to rest. As we discussed, I will not be available to answer questions or email from Friday, August 8, 2008 through August 12, 2008 as I will be on vacation with my family. In the event you need to discuss this matter, please do not hesitate to contact my associate Kristen Foster, in our Houston office at 713-552-1693. Should you need to reach me by phone to discuss the matter further, my cell number is 817-229-6722.

Very truly yours,

Rhonda Crass

Rhonda Crass


Enclosure- As stated.
cc:      Curtis Rhodes – via email without attachments
         Beth Briscoe – via email without attachments
         Jeanna Sniffin – via email without attachments
         Kristen Foster – via email without attachments

 

Via FedEx Tracking Number: 854625439367
Via Fax to:  (979) 793-3823

July 29, 2008

Curtis Rhodes
Superintendent
Needville Independent School District
16227 Highway 36 South
Needville, TX 77461

   Re: A█████ A█████

Dear Superintendent Rhodes:

We write on behalf of our clients Michelle Betenbaugh and Kenney Arocha, whose son A█████ A█████ will enroll in Needville Elementary School this August. It is our understanding that the Needville Independent School District ("NISD") has refused to grant an exception to its dress code restriction on boys' hair length for A████ despite being informed that cutting A████s hair would violate his sincerely held religious beliefs.  NISD's threatened application of its hair-length policy violates the First and Fourteenth Amendments to the United States Constitution and Texas' Religious Freedom Restoration Act ("RFRA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 110.001 *et seq.*

  I.  Background

Ms. Betenbaugh and Mr. Arocha have chosen to raise A████ according to his father's Native American religious beliefs.  Mr. Arocha and A████ believe that one's hair should only be cut for life-changing occasions, such as the death of a loved one, and that their long hair is a symbol of the length of their own lives. A████s hair has never been cut.

Ms. Betenbaugh and Mr. Arocha own property and have built a home at 16916 Brumbelow Road, Needville, TX 77461, within the boundaries of NISD.  They expect to take up residence in their home by Friday, August 1, 2008 and will enroll A████ in kindergarten at Needville Elementary School this August.  In anticipation of this move, Ms. Betenbaugh emailed NISD secretary Linda Sweeney on November 6, 2007 to advise about A████s upcoming enrollment

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ∘ AUSTIN, TX  78711-2905 ∘ T/512.478.7300 ∘ F/512.478.7303
WWW.ACLUTX.ORG

 

and hair length, and to inquire what documentation of his Native American heritage would be required. She received no response. On May 27, 2008, Ms. Betenbaugh emailed Needville Elementary School Principal Jeanna Sniffin, again explaining A███s Native American heritage and inquiring as to how his long hair would be addressed. Principal Sniffin responded by email, less than a day later, that "[l]ong hair is not allowed." On May 28, 2008, Ms. Betenbaugh emailed Superintendent Rhodes, repeating her request. Superintendent Rhodes responded via email on May 29, 2008 and requested a meeting to discuss the issue.

Ms. Betenbaugh, Mr. Arocha, and A███ met with Superintendent Rhodes and Principal Sniffin on June 9, 2008. During this meeting, Superintendent Rhodes stated that A███ would not be allowed to attend school with long hair without proof of a sincere religious belief. Although the family explained Mr. Arocha's and A███'s Native American religious beliefs and provided DNA evidence of Mr. Arocha's Native American ancestry, Superintendent Rhodes informed the family that A███ would be placed in an "alternative school setting" if he attended school with long hair and stated that NISD would not allow exceptions to the dress code for any religious beliefs.

On June 16, 2008, Superintendent Rhodes advised Ms. Betenbaugh of his final decision not to accommodate A███'s religious beliefs, both by telephone and in writing. During their phone conversation, Ms. Betenbaugh again asked if the dress code would be applied to students of all religions, and Superintendent Rhodes responded that it applied to all students, implying that the school would not grant a religious exception under any circumstances. Superintendent Rhodes' letter of June 16, 2008 directed that his decision could be appealed to the NISD Board of Trustees, and enclosed NISD Board Policy FNG (Local) on student and parent grievances along with a Level Three Appeal Notice form.

Ms. Betenbaugh filed an appeal to the Board on June 27, 2008. After a hearing on July 16, 2008, the Board rejected the appeal, apparently on grounds that the appeal was premature because A███ was not yet enrolled. Neither Principal Sniffin, Superintendent Rhodes, nor any other NISD official had previously informed Ms. Betenbaugh that her grievance was prematurely filed. To the contrary, Superintendent Rhodes, in his June 16, 2008 letter, specifically directed Ms. Betenbaugh to file a Level Three appeal upon rendering his decision not to accommodate A███'s religious beliefs. Nevertheless, Superintendent Rhodes informed Mr. Arocha at the July 16th Board meeting that Mr. Arocha would need

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ● AUSTIN, TX 78711-2905 ● T/512.478.7300 ● F/512.478.7303
WWW.ACLUTX.ORG ●▒▒▒▒●

24

 

to wait until A████was enrolled and had attended class to renew the request that A████not be required to cut his hair, then begin the grievance process again from Level One.

    II.      Applicable Law

NISD's threatened application of its hair-length policy by refusing to enroll or disciplining A████violates A████'s rights to free expression and free exercise of his religion under the First Amendment and Texas' Religious Freedom Restoration Act. *See, e.g., Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F.Supp. 659 (S.D. Tex. 1997); *Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F.Supp. 1319 (E.D. Tex. 1993), *remanded* after federal RFRA enacted, 20 F.3d 469 (5th Cir. 1994); Tex. Civ. Prac. & Rem. Code Ann. § 110.001 *et. seq.* NISD's threatened action also violates Ms. Betenbaugh's and Mr. Arocha's rights under the Fourteenth Amendment. *See, e.g., Alabama & Coushatta Tribes*, 817 F.Supp. at 1334 (citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)).

    III.     Requested Remedy

Because NISD's actions described above violate Ms. Betenbaugh's, Mr. Arocha's, and A████s constitutional and statutory rights, we hereby request that NISD either:

- Immediately grant A████ an exemption from Needville Elementary School's and NISD's hair-length policy for the duration of his enrollment in NISD; OR

- Provide written assurance that A████will not be refused enrollment, disciplined, or otherwise treated differently in any way from other Needville Elementary School kindergarten students by any NISD official, administrator, teacher or agent until his parents have filed and completed a renewed grievance under NISD Board Policy FNG (Local), including any Level Two and Level Three appeals to which they are entitled under that policy.

We are confident that we can resolve this matter collaboratively, and we look forward to your prompt response to our request. However, if we do not receive written confirmation that NISD will pursue one of the two courses of action

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ● AUSTIN, TX  78711-2905 ● T/512.478.7300 ● F/512.478.7303
WWW.ACLUTX.ORG

 

outlined above by August 13, 2008, we will take whatever additional action we determine is necessary in consultation with our clients to secure their rights under the law.  I may be reached via telephone at (512) 478-7300, extension 128, via email at fterrell@aclutx.org, or via fax at (512) 478-7303.

Sincerely,

Lisa Graybill
Legal Director
ACLU Foundation of Texas


Fleming Terrell
Staff Attorney
ACLU Foundation of Texas


cc:     Board of Trustees
        Needville Independent School District
        16227 Highway 36 South
        Needville, TX 77461
        (979) 793-3823 (f)

        Jeanna Sniffin
        Principal
        Needville Elementary School
        P.O. Box 412
        Needville,Texas 77461
        979-793-2299 (f)

        Kristen Zingaro Foster
        Henslee Schwartz LLP
        3200 S.W. Freeway, Suite 1200
        Houston, TX 77027
        (713) 552-1697 (f)

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF TEXAS
P.O. BOX 12905 ● AUSTIN, TX 78711-2905 ● T/512.478.7300 ● F/512.478.7303
WWW.ACLUTX.ORG

From:Missouri City Police Dept.                    08/19/2008 11:18      #820 P.001/020

## LEVEL THREE APPEAL NOTICE

To appeal a Level Two decision, or the lack of a timely response after a Level Two conference, please fill out this form completely and submit it by hand delivery, fax, or U.S. mail to the Superintendent or designee within the time established in FNG (LOCAL).  Appeals will be heard in accordance with FNG (LEGAL) and (LOCAL) or any exceptions outlined therein.

1. Name  A_____ A_____ (Student) Michelle Betenbaugh, Kenney Arocha (parents

2. Address  Current: 12135 Brighton Ln        Future: 16916 Brumbelow Rd.

   Stafford, TX 77477          Needville TX 77461

   Telephone Number (832) 330-9406        832-646-3553

3. If you will be represented in voicing your appeal, please identify the person representing you.

   Name/Title_____

   Address_____

   _____

   Telephone Number (_____) _____

4. To whom did you present your appeal at Level Two?  Principal Sniffin and Superintendent Rhodes

   Date of conference  6-9-08

   Date you received a response to the Level Two conference  6-16-08

5. Please explain specifically how you disagree with the outcome at Level Two.

   Please see attached

6. Do you want the Board to hear this appeal in open session?  yes

   Please be aware that the Texas Open Meetings Act may prevent the Board from granting a request for open session.

7. Attach a copy of your original complaint and any documentation submitted at Level One and a copy of your Level Two appeal notice.

8. Attach a copy of the Level Two response being appealed, if applicable.

Student's or Parent's signature _M___ B____

Signature of Student's or Parent's representative_____

Date of filing  6-25-08

27

From:Missouri City Police Dept.                    08/19/2006 11:19        #820 P.002/020

## Explanation of Item 5 in Level Three Appeal Notice

We as A████s parents disagree with Mr. Rhodes' decision because our son's hair and its length are a sacred part of the belief system we practice. Cutting his hair in order to comply with the dress code is not an option. We should not have to choose between our child's education and our beliefs.

This is a right protected under the First Amendment, the Texas Religious Freedom Restoration Act and the Native American Free Exercise of Religion Act.

A████s hair is kept clean and neatly braided so it is not un-hygienic. His hair is no more likely to be a distraction or safety hazard than any other child's hair regardless of sex.



# Needville
# Independent
# School
# District

J
A
Y
S

16227 HIGHWAY 36 • P.O. BOX 412 • NEEDVILLE, TEXAS 77461 • 979-793-4308 • FAX: 979-793-3823

To:     Michelle Betenbaugh
From:  Curtis Rhodes
Date:   June 16, 2008
RE:     Decision regarding dress code

As I mentioned on the phone this morning, my decision is to uphold the dress code currently adopted by the Needville Independent School District in relation to your son's hair length.  Enclosed is the Policy FNG (Local) and a form to submit if you wish to appeal my decision to the board of trustees.

Sincerely,

Curtis Rhodes
Superintendent of Schools

REACHING FOR NEW HEIGHTS OF EXCELLENCE!

| Elementary School | Intermediate School | Middle School | Junior High School | High School |
|---|---|---|---|---|
| 979-793-4241 | 979-793-5300 | 979-793-3027 | 979-793-4250 | 979-793-4158 |

29

## STUDENT/PARENT COMPLAINT FORM – LEVEL ONE

To file a formal complaint, please fill out this form completely and submit it by hand delivery, fax, or U.S. mail to the appropriate administrator within the time established in FNG (LOCAL). All complaints will be heard in accordance with FNG (LEGAL) and (LOCAL) or any exceptions outlined therein.

Name A██████ A██████ (student) Michelle Betenbaugh, Kenney Arocha (Parents)

Address Current : 12135 Brighton Ln     Future : 16916 Brumbelow Rd

Stafford, TX 77477          Needville, TX 77461

Telephone Number (832) 330-9406 (mother)  832-646-3553 (father)

1. **If you will be represented in voicing your complaint, please identify the person representing you.**

Name  N/A

Address

Telephone Number (___)

2. **Please describe the decision or circumstances causing your complaint (give specific factual details).**

Emailed Principal Sniffin wanting to know if my Native American son would be allowed to attend school with his long hair. She answered "no".

3. **What was the date of the decision or circumstances causing your complaint?**

May 27, 2008

4. **Please explain how you have been harmed by this decision or circumstance.**

Our son's hair is part of our religious beliefs and cannot be cut.

30

Please describe any efforts you have made to resolve your complaint informally and the responses to your efforts.

I asked if Ms. Sniffin was familiar with the Native American Religious Freedom Act.

**With whom did you communicate?**

Jeanna Sniffin

On what date?  May 27, 2008

6. Please describe the outcome or remedy you seek for this complaint.

She did not respond.

Student or Parent  Signature

Signature of Student's or Parent's Representative

Date of filing  6-25-08

*Complainant, please note:*

*A complaint form that is incomplete in any material way may be dismissed, but may be refiled with all the required information if the refiling is within the designated time for filing a complaint.*

*Attach to this form any documents you believe will support the complaint; if unavailable when you submit this form, they may be presented no later than the Level One conference. Please keep a copy of the completed form and any supporting documentation for your records.*

From:Missouri City Police Dept.                    08/19/2008 11:21      #820 P.006/020

## LEVEL TWO APPEAL NOTICE

To appeal a Level One decision, or the lack of a timely response after a Level One conference, please fill out this form completely and submit it by hand delivery, fax, or U.S. mail to the Superintendent or designee within the time established in FNG (LOCAL).  Appeals will be heard in accordance with FNG (LEGAL) and (LOCAL) or any exceptions outlined therein.

1. Name  A_____ A_____ (student) Michelle Betenbaugh, Kenney Arocha (Parents)

2. Address Current: 12135 Brighton Ln    Future: 16916 Brumbelow Rd.
   Stafford, Tx 77477                 Needville, Tx 77461

   Telephone Number (832) 380-9406 (mother)   832-646-3553 (father)

3. If you will be represented in voicing your appeal, please identify the person representing you.

   Name/Title  N/A

   Address _____

   Telephone Number (____) _____

4. To whom did you present your complaint at Level One?  Superintendent Rhodes

   Date of conference  6-9-08

   Date you received a response to the Level One conference  6-16-08

5. Please explain specifically how you disagree with the outcome at Level One.

   Our son's hair is part of our religious beliefs and
   cannot be cut

6. Attach a copy of your original complaint and any documentation submitted at Level One.

7. Attach a copy of the Level One response being appealed, if applicable.

Signature of Student or Parent _____

Signature or Student's or Parent's Representative _____

Date of filing  6-25-08

32

From:Missouri City Police Dept.                    08/19/2008 11:21    #820 P.007/020

·STAR – How Schools Are Dealing With Racism: What works?                    Page 1 of 3



# How Schools Are Dealing With Racism: What works?

No matter what the population of your school is, Native Americans deserve to be treated, in both subject matter and in person, as if they have relevance in your school.

Schools have a lot on their plates with NCLB requirements, and no group is quite as negatively effected by NCLB as Native American students. For more information on how Native students are truly left behind, visit the report, No Child Left Behind in Indian Country. The testimonials there show how impossible it is to provide everything the Native American child needs within the confines of the Act.

### What do Native American children need to thrive in Public Education?

- Cultural recognition in curriculum
- Tribal language instruction
- Educators need cultural education and even immersion to:
  - Understand the learning styles of many Native people, especially those who live on or close to Indian reservations, which may be in direct correlation to their culture, for instance, experiential learning as opposed to learning by rote.
  - Recognizing the disastrous effects of the History of Indian Education and incorporating that knowledge into CHANGE!
- Indian Education Committees need more control of federal funding in order to use the funding that is supposed to benefit Indian children instead of the school using the money for their own purposes
- Tribal representation in the classroom and school including Native teachers and most particularly, guidance counselors who need to be Ambassadors for the Native student whose lifestyle may be nothing like what they learn in school.
- Understanding and RESPECT of Native culture by teachers of the dominant culture
- Elimination of stereotypes
- High expectations
- Patience when awaiting an answer, which may be being carefully considered before answering. ·

Above all, Native students need you to CARE. Studies have shown that Native children do well when the teacher treats them in a caring way. *What student doesn't?*

## Even if there are no Native American students in your school, there must
be a change in the way Native Americans are portrayed. Native Americans are the fastest growing minority group in the country. If your school does not prepare your students to deal with Native Americans as people, there is a chance that your students will go out into the world and become the recipient of a lawsuit of discrimination. We Have Seen It!

### How can your school support a positive image of Native Americans?

- Students need to learn that Indians do not say whooo-wooo or dance in a crazy fashion. Native dancing is sacred and filled with meaning. (See Educational No-Nos) If you need suitable classroom materials, go to STAR's collection of Lesson Plans and Curricula and book list of selected materials.

STAR - How Schools Are Dealing With Racism: What works?

- Students must learn not to call Native people with long hair Pocahontas. They must not adopt fake Indian names and teachers must not ask their students to do so as a project. (See Richie Plass's writings)

- Native students who wear their hair long or celebrate their culture in other visible ways must be protected by the school from children who taunt them. Long hair is sacred and traditional to some people and schools have lost law suits when trying to force Native students to fit within the dress code. Do you want your school to be served a law suit? It can happen. We have seen it!

- Teachers must include material about Native Americans TODAY, not just historically. Buy books from our Teachers Wish List for your libraries. Hang posters with sayings and Native images.

How is all of this CHANGE easily accomplished?

- Celebrate Native American Heritage Month in November. See Native American Heritage Month.

- Use materials that teach children how to recognize stereotypes in curriculum material. Using *Little House on the Prairie*? Did you know that it says "The only good Indian is a dead Indian," not once, but THREE TIMES? How is your Native student reacting when they read that? Read our report on the Newberry Award winning book, *Sign of the Beaver*, which contains approximately 36 pages of stereotypical and hateful comments, and is still highly used in classrooms today. What kind of license does this kind of material give your non-native students to commit acts of racism including taunting, and yes, much worse? Did you know that there are more acts of violence committed on American Indians then any other group of people? Click here.

- If you would like to see the kind of discrimination that occurs even today, please visit our Archives.

- Bring in Native speakers to talk about Manifest Destiny, at least one class or an ongoing series of history from a Native American perspective. Talk about your local history. Talk about the effects of the Native American Holocaust. What happened, why, what can be learned from it? Need Native speakers, contact us at CWAdvocacyCenter@aol.com and we will find one for you. Need help finding specific material? We are here to help.

- Discuss famous Native Americans, past and present. Discuss contributions, and how Native Americans were an important part of the development of the concept of Freedom.

Our website has every resource you need to plan a full month of activities for Native American Heritage Month. However, as one mother said to us, "Our children are Native American all year!" Be sure to include Native Lesson Plans in your math and science curriculum and to present the American Indian side of history throughout the year. You will find everything you need here on this site.

**Are you having problems with racism in your schools and don't know how to deal with it?**

Here are some suggestions:

- When the school takes a position that there is a No Tolerance policy of antagonism towards Native children, the children will respond positively.

- When the school teaches the true history, the children will learn compassion.

- When the schools bring in Native speakers, the children will learn that Native Americans are here today and have much to teach us. As the world goes "Green" many of the philosophies of traditional Native ways are becoming mainstream. Understanding this brings recognition of the on-going presence of Native Americans and breeds respect for their cultures.

- Respect for differences is paramount in this global society. Have your students take this quiz from Tolerance.org to determine the racial climate in your schools. You may be VERY surprised. Click here for the Quiz.

From:Missouri City Police Dept.                    08/19/2008 11:23    #820 P.009/020

STAR - How Schools Are Dealing With Racism: What works?                    Page 3 of 3

- If you are looking for a way to encourage your students to connect across racial divides, consider a group who specializes in just that kind of a program. You can find at least one on our Indian Education page.

## Thank you for your concern and your advocacy!



Academic Papers, Articles
and Reports Index

STAR Home

**Students and Teachers Advocating Respect**
ROSEPETL5@aol.com

The "STAR - Students and Teachers Against Racism" web site is the
Copyright © 2002, 2003, 2004, 2005, 2006, 2007, 2008 of Christine Rose
All Rights Reserved.



# GeneTree™
## DNA TESTING CENTER

## Ancestral Origins Paternal Lineage Analysis

| | | | |
|---|---|---|---|
| **Name:** | Kenney Arocha | **Report Date:** | 31 August 2006 |
| **Date of Birth:** | 20 July 1975 | **Case Number:** | T070796 |
| **Collection Date:** | 12 July 2006 | | |

**Results and Y Chromosome Haplogroup Assignment:**
DNA was extracted from Kenney Arochas's buccal swab and screened for multiple single nucleotide polymorphisms (SNPs). Lineages are each defined by a mutation or SNP in the Y chromosome. The Y chromosome genotype for Kenney Arochas exhibits the M89T allele and places him in the Y-chromosome haplogroup **F.**[1,2] This marker is more commonly found among European and Middle Eastern populations.

**Method of Testing:**
DNA was extracted from Kenney Arocha's buccal swab and screened for mutations along the Y-chromosome that define different Y-chromosome lineages or haplogroups. This multi-locus genotype was then systematically compared to databases of genotypes throughout the world. The results of this comparison identify those genotypes that exactly or closely match Kenney Arocha's sample.

**References**
1 Underhill PA, Passarino G, Lin AA, Shen P, Mirazon LM, Foley RA, Oefner PJ, and Cavalli-Sforza LL (2001) The phylogeography of Y chromosome binary haplotypes and the origins of modern human populations. Annals of Human Genetics *65*:43-62.
2 The YCC, and Hammer M (2002) A nomenclature system for the tree of human Y-chromosomal binary haplogroups. Genome Research *12*:339-348.

*James Sorenson*

James Sorenson, MPH/HSA, Laboratory Supervisor
GeneTree DNA Testing Center

The associations of name, relationship and ethnicity with the accompanying results rely strictly on the information provided to the laboratory. GeneTree is not responsible for the origin and/or transport of the samples prior to arriving at GeneTree. Testing and analysis was performed in collaboration with Trace Genetics, LLC. The participant of this study understands and agrees that these results are strictly for personal or genealogical information only.

2495 South West Temple ● Salt Lake City, UT 84115 ● Phone: (801) 461-9757 ● Fax: (801) 462-1403
www.genetree.com     DNA TESTING FOR VERIFYING HUMAN IDENTITY AND RELATEDNESS     (888) 404-GENE

36

 

**GeneTree™**
DNA TESTING CENTER

## Ancestral Origins Maternal Lineage Analysis

**Name:** Kenney Arocha          **Report Date:** 22 August 2006
**Date of Birth:** 20 July 1975      **Case Number:** T070796
**Collection Date:** 12 July 2006

**Results:**
The HVSI sequence for Kenney Arocha is more specifically representative of Native American Individuals. However, your particular sequence does not match exactly any sequences from the Native American mtDNA database. This sequence represents a unique haplotype that is one-mutational-step away from the Native American basal B haplotype. The basal B haplotype, one of five founding mtDNA haplotypes in the New World, is found in nearly all Native American populations.

**MtDNA sequence for Kenney Arocha (Nucleotide positions 16001-16383):**

ATTCTAATTTAAACTATTCTCTGTTCTTTCATGGGGAAGCAGATTTGGGTACCACCCAAGTATTGACTC
ACCCATCAACAACCGCTATGTATTTCGTACATTACTGCCAGCCACCATGAATATTGTACGGTACCATA
AATACTTGACCACCTGTAGTACATAAAAACCCAATCCACATCAAACCCCCCTCCCCATGCTTACAAGC
AAGTACAGCAACCAACCCTCAACTATCACACATCAACTGCAACTCCAAAGCCAGCCCTCACCCACTA
GGATACCAACAAACCTACCCACCCTTAACAGTACATAGTACATAAAGCCATTTACCGTACATAGCACA
TTACAGTCAAATCCCTTCTCGTCCCCATGGATGACCCCCCTCA

**Method of Testing and Analysis:**
A segment of 383 base pairs of DNA in the mitochondrial genome, referred to as the "Hypervariable Segment I" or HVSI, was sequenced. This sequence was then systematically compared to a database of HVSI sequences of individuals with ancestry native to North America. The results of this comparison identify those sequences that match exactly or are one mutation step away from your HVSI sequence. This sequence is also compared to the Cambridge Reference Sequence or CRS. The CRS was the first human mitochondrial genome published in 1981. By comparing your sequence to the CRS we can identify the name of the lineage to which you belong. These lineages are also called haplogroups. Many haplogroups are continent specific and subdivisions of these haplogroups are often regional specific.

**Summary and Interpretation of Results:**
The HVSI sequence for Kenney Arocha contains four differences from CRS. The positions where Kenney Arocha's DNA is different from CRS are called nucleotide positions and there are approximately 16,569 nucleotide positions (np) in the mitochondrial genome. Kenney Arocha's differences occur at np 16,183, 16,189, 16,217, and 16,309. These differences are consistent with Kenney Arocha belonging to Asian and Native American haplogroup B.

**Culture History**
The origin of your mtDNA haplotype dates back to a maximum of 25,000 years before present[1] and coincides with the initial peopling of the Americas. The peopling of the Americas took place with the passage of nomadic Siberian hunters from Northeast Asia to Alaska across the Bering Land Bridge.[2] Currently, mtDNA and Y chromosome evidence suggests that the initial migrants to the Americas originated in the Lake Baikal/northern Mongolia region.[3] These nomadic big game hunters were extremely mobile and quickly colonized the New World spreading from

2495 South West Temple • Salt Lake City, UT 84115 • Phone: (801) 461-9757 • Fax: (801) 462-1403

From: Missouri City Police Dept.                    08/19/2008 11:25     #820 P.012/020





**GeneTree™**
DNA TESTING CENTER

Alaska to the southern tip of Argentina in only a few thousand years.[2]  As population densities increased and large game became rare, these hunters began to diversify their diet and fill all available ecological niches.  At the time of
European contact, Native American groups lived extremely varied lifestyles with some groups, as in Mexico, developing complex agricultural based societies and other groups, as in the Great Basin, remaining hunter-gatherers—living in small mobile bands.[2]

**Frequency of Haplogroup B in North America**



### References
1. P. Forster et al. (1996) Origin and evolution of native American mtDNA variation: a re-appraisal. American Journal of Human Genetics 59:  935-945.
2. B. Fagan (2000) Ancient North America: the archaeology of a continent.  Thames and Hudson, New York.
3. J. Eshleman et al. (2003) Mitochondrial DNA studies of Native Americans: Conceptions and misconceptions of the population prehistory of the Americas 12: 7-18.

_James Sorenson_
_____
James Sorenson, MPH/HSA, CLSp(MB), Laboratory Supervisor
GeneTree DNA Testing Center

The associations of name, relationship and ethnicity with the accompanying results rely strictly on the information provided to the laboratory.  GeneTree is not responsible for the origin and/or transport of the samples prior to arriving at GeneTree.  Testing and analysis was performed in collaboration with Trace Genetics, LLC.  The participant of this study understands and agrees that these results are strictly for personal or genealogical information only.

From:Missouri City Police Dept. 08/19/2008 11:26 #820 P.013/020

# Certific... Ancestry

eTree™

*Add Native American and East Asian Percentages together for total American Indian % as that by Arocha*

has been tested by DNAPrint Genomics Inc. for genetic ancestry

## ANCESTRYBYDNA 2.5

### RESULTS for S104411

| ESTIMATE | ANCESTRY |
|----------|----------|
| 35% | Native American |
| 33% | East Asian |
| 22% | European |
| 10% | Sub-Saharan African |

Tested on **August 18, 2006**
GeneTree DNA Testing Center
2495 South West Temple
Salt Lake City, UT 84115 USA

39



J
A
Y
S

# Needville
# Independent
# School
# District

16227 HIGHWAY 36 • P.O. BOX 412 • NEEDVILLE, TEXAS 77461 • 979-793-4308 • FAX: 979-793-3823

To:   Michelle Betenbaugh
From: Curtis Rhodes
Date: June 16, 2008
RE:   Decision regarding dress code

As I mentioned on the phone this morning, my decision is to uphold the dress code currently adopted by the Needville Independent School District in relation to your son's hair length.  Enclosed is the Policy FNG (Local) and a form to submit if you wish to appeal my decision to the board of trustees.

Sincerely,

Curtis Rhodes
Superintendent of Schools

REACHING FOR NEW HEIGHTS OF EXCELLENCE!

| Elementary School | Intermediate School | Middle School | Junior High School | High School |
|---|---|---|---|---|
| 979-793-4241 | 979-793-5300 | 979-793-3027 | 979-793-4250 | 979-793-4158 |

40

From:Missouri City Police Dept.                    08/19/2008 11:26    #820 P.015/020

Needville ISD
079906

| STUDENT RIGHTS AND RESPONSIBILITIES | FNG |
|---|---|
| STUDENT AND PARENT COMPLAINTS/GRIEVANCES | (LOCAL) |

| | |
|---|---|
| **GUIDING PRINCIPLES**<br>**INFORMAL PROCESS** | The Board encourages students and parents to discuss their concerns and complaints through informal conferences with the appropriate teacher, principal, or other campus administrator. |
| | Concerns should be expressed as soon as possible to allow early resolution at the lowest possible administrative level. |
| **FORMAL PROCESS** | If an informal conference regarding a complaint fails to reach the outcome requested by the student or parent, the student or parent may initiate the formal process described below by timely filing a written complaint form. |
| | Even after initiating the formal complaint process, students and parents are encouraged to seek informal resolution of their concerns. A student or parent whose concerns are resolved may withdraw a formal complaint at any time. |
| | The process described in this policy shall not be construed to create new or additional rights beyond those granted by law or Board policy, nor to require a full evidentiary hearing or "mini-trial" at any level. |
| **FREEDOM FROM RETALIATION** | Neither the Board nor any District employee shall unlawfully retaliate against any student or parent for bringing a concern or complaint. |
| **NOTICE TO STUDENTS AND PARENTS** | The principal of each campus shall inform students and parents of this policy. |
| **APPLICATION** | Except as addressed by SPECIFIC COMPLAINTS, below, this policy applies to all complaints or grievances from students or parents. |
| **SPECIFIC COMPLAINTS** | Complaints alleging certain forms of harassment shall be processed in accordance with FFH. |
| | For more information on how to proceed with complaints regarding: |

1. Alleged discrimination, see FB.

2. Loss of credit on the basis of attendance, see FEC.

3. Removal to a disciplinary alternative education program, see FOC.

4. Expulsion, see FOD and the Student Code of Conduct.

5. Identification, evaluation, or educational placement of a student with a disability within the scope of Section 504, see FB.

6. Identification, evaluation, educational placement, or discipline of a student with a disability within the scope of the Individuals with Disabilities Education Act, see EHBA, FOF, and the par-

From: Missouri City Police Dept.                    08/19/2008 11:27    #820 P.016/020

Needville ISD
079906

STUDENT RIGHTS AND RESPONSIBILITIES                              FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                        (LOCAL)

ents' rights handbook provided to parents of all students re-
ferred to special education.

7.  Instructional materials, see EFA.

8.  On-campus distribution of nonschool materials, see FNAA.

9.  A commissioned peace officer who is an employee of the Dis-
trict, see CKE.

**DEFINITIONS**  For purposes of this policy, terms are defined as follows:

**COMPLAINT /**  The terms "complaint" and "grievance" shall have the same mean-
**GRIEVANCE**  ing.

**FILING**  Complaint forms and appeal notices may be filed by hand-delivery,
fax, or U.S. Mail.  Hand-delivered filings shall be timely filed if re-
ceived by the appropriate administrator or designee by the close of
business on the deadline.  Fax filings shall be timely filed if they
are received on or before the deadline, as indicated by the
date/time shown on the fax copy.  Mail filings shall be timely filed if
they are postmarked by U.S. Mail on the deadline and received by
the appropriate administrator or designated representative no more
than three days after the deadline.

**RESPONSE**  At Levels One and Two, "response" shall mean a written communi-
cation to the student or parent from the appropriate administrator.
Responses may be hand-delivered or sent by U.S. Mail to the stu-
dent's or parent's mailing address of record.  Mailed responses
shall be timely if they are postmarked by U.S. Mail on the deadline
and received by the student or parent or designated representative
no more than three days after the response deadline.

**REPRESENTATIVE**  "Representative" shall mean any person who or organization that is
designated by the student or parent to represent the student or
parent in the complaint process. A student may be represented by
an adult at any level of the complaint.

The student or parent may designate a representative through writ-
ten notice to the District at any level of this process.  If the student
or parent designates a representative with fewer than three days'
notice to the District before a scheduled conference or hearing, the
District may reschedule the conference or hearing to a later date, if
desired, in order to include the District's counsel.

**DAYS**  "Days" shall mean District business days.  In calculating time lines
under this policy, the day a document is filed is "day zero," and all
deadlines shall be determined by counting the following day as
"day one."

DATE ISSUED: 7/22/2004                                    2 of 5
UPDATE 73
FNG(LOCAL)-A

Needville ISD
079906

| STUDENT RIGHTS AND RESPONSIBILITIES | FNG |
|---|---|
| STUDENT AND PARENT COMPLAINTS/GRIEVANCES | (LOCAL) |

| | |
|---|---|
| **GENERAL PROVISIONS** | Complaints arising out of an event or a series of related events shall be addressed in one complaint. A student or parent shall not bring separate or serial complaints arising from any event or series of events that have been or could have been addressed in a previous complaint. |
| **UNTIMELY FILINGS** | All time limits shall be strictly followed unless modified by mutual written consent. |
| | If a complaint form or appeal notice is not timely filed, the complaint may be dismissed, on written notice to the student or parent, at any point during the complaint process. The student or parent may appeal the dismissal by seeking review in writing within ten days, starting at the level at which the complaint was dismissed. Such appeal shall be limited to the issue of timeliness. |
| **COSTS INCURRED** | Each party shall pay its own costs incurred in the course of the complaint. |
| **COMPLAINT FORM** | Complaints under this policy shall be submitted in writing on a form provided by the District. |
| | Copies of any documents that support the complaint should be attached to the complaint form. If the student or parent does not have copies of these documents, copies may be presented at the Level One conference. After the Level One conference, no new documents may be submitted unless the student or parent did not know the documents existed before the Level One conference. |
| | A complaint form that is incomplete in any material aspect may be dismissed, but may be refiled with all the requested information if the refiling is within the designated time for filing a complaint. |
| **LEVEL ONE** | Complaint forms must be filed: |

1.  Within 15 days of the date the student or parent first knew, or with reasonable diligence should have known, of the decision or action giving rise to the complaint or grievance; and

2.  With the lowest level administrator who has the authority to remedy the alleged problem.

    In most circumstances, students and parents shall file Level One complaints with the campus principal.

    If the only administrator who has authority to remedy the alleged problem is the Superintendent or designee, the complaint may begin at Level Two following the procedure, including deadlines, for filing the complaint form at Level One.

43

Needville ISD
079906

STUDENT RIGHTS AND RESPONSIBILITIES                         FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                    (LOCAL)

|  |  |
|---|---|
|  | If the complaint is not filed with the appropriate administrator, the receiving administrator must note the date and time the complaint form was received and immediately forward the complaint form to the appropriate administrator. |
|  | The appropriate administrator shall hold a conference with the student or parent within ten days after receipt of the written complaint. |
|  | The administrator shall have ten days following the conference to provide the student or parent a written response. |
| LEVEL TWO | If the student or parent did not receive the relief requested at Level One or if the time for a response has expired, the student or parent may request a conference with the Superintendent or designee to appeal the Level One decision. |
|  | The appeal notice must be filed in writing, on a form provided by the District, within ten days after receipt of a response or, if no response was received, within ten days of the response deadline at Level One. |
|  | The Superintendent or designee shall hold a conference within ten days after the appeal notice is filed. At the conference, the Superintendent or designee shall consider only the issues and documents presented at Level One and identified in the Level Two appeal notice. The Superintendent or designee shall have ten days following the conference to provide the student or parent a written response. |
| LEVEL THREE | If the student or parent did not receive the relief requested at Level Two or if the time for a response has expired, the student or parent may appeal the decision to the Board. |
|  | The appeal notice must be filed in writing, on a form provided by the District, within ten days after receipt of a response or, if no response was received, within ten days of the response deadline at Level Two. |
|  | The Superintendent or designee shall inform the student or parent of the date, time, and place of the Board meeting at which the complaint will be on the agenda for presentation to the Board. |
|  | The Superintendent or designee shall provide the Board with copies of the complaint form, all responses, all appeal notices, and all written documentation previously submitted by the student or parent or the administration. The Board shall consider only those issues and documents presented at the preceding levels and identified in the appeal notice. |

DATE ISSUED: 7/22/2004                                      4 of 5
UPDATE 73
FNG(LOCAL)-A

Needville ISD
079906

STUDENT RIGHTS AND RESPONSIBILITIES                                    FNG
STUDENT AND PARENT COMPLAINTS/GRIEVANCES                               (LOCAL)

The District shall determine whether the complaint will be pre-
sented in open or closed meeting in accordance with the Texas
Open Meetings Act and other applicable law.  [See BE]

The presiding officer may set reasonable time limits and guidelines
for the presentation.  The Board shall hear the complaint and may
request that the administration provide an explanation for the deci-
sions at the preceding levels.

In addition to any other record of the Board meeting required by
law, the Board shall prepare a separate record of the Level Three
presentation.  The Level Three presentation, including the presen-
tation by the student or parent or the student's representative, any
presentation from the administration, and questions from the Board
with responses, shall be recorded by audio recording, video/audio
recording, or court reporter.

The Board shall then consider the complaint.  It may give notice of
its decision orally or in writing at any time up to and including the
next regularly scheduled Board meeting.  If for any reason the
Board fails to reach a decision regarding the complaint by the end
of the next regularly scheduled meeting, the lack of a response by
the Board upholds the administrative decision at Level Two.

DATE ISSUED: 7/22/2004                  ADOPTED:                    5 of 5
UPDATE 73
FNG(LOCAL)-A

45

6-26-06

To whom it may concern,

At this time we have not settled on which members of our support team shall be speaking for us as representatives at the appeal meeting. We will let you know in writing at least three days before the board meeting who will be representing us.

Thank you,
Michelle Betenbaugh
Kenney Arocha

46