IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| A.A., by and through his | § | |
| parents and legal guardians, MICHELLE | § | |
| BETENBAUGH and KENNEY AROCHA; | § | |
| MICHELLE BETENBAUGH, individually; | § | |
| and KENNEY AROCHA, individually | § | CIVIL ACTION NO: |
| | § | |
| Plaintiffs. | § | |
| | § | |
| vs. | § | |
| | § | |
| NEEDVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT; | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' REDACTED MEMORANDUM OF LAW IN SUPPORT OF
OPPOSED MOTION FOR TEMPORARY RESTRAINING ORDER
<u>AND PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION.................................................................................................1

II. STATEMENT OF FACTS....................................................................................2

III. ARGUMENT.......................................................................................................4

    A.  Plaintiffs are Likely to Succeed on the Merits of their
        Constitutional and State Law Claims....................................................5

        1.  The challenged policies impermissibly violate A.A.'s right to freely
            exercise his religion under the First Amendment and Texas' Religious
            Freedom Restoration Act.................................................................5

            a)  As NISD has acknowledged, A.A. and his family are
                substantially motivated by sincere religious belief....................5

            b)  NISD's requirement that A.A. wear his hair stuffed
                down his shirt, face discipline should it stray, and
                undergo the humiliating exercise of re-proving his
                sincerity to the NISD Board yearly substantially
                burdens his free exercise of religion..........................................8

            c)  Neither the application of NISD's Dress Code,
                nor NISD's punitive policy for A.A. can survive
                the heightened scrutiny required by TRFRA and
                the First Amendment..................................................................10

            2.  NISD's policies violate A.A.'s right to free expression
              under the First Amendment............................................................13

            a)  A.A.'s long braids are protected by the First
                Amendment because they are intended and likely
                to be understood as an expression of his American
                Indian religion, heritage, and identity......................................14

            b)  NISD's policies prohibiting A.A.'s long braids
                violate the First Amendment because the braids
                do not interfere with school operations, and
                because the policies place a greater restriction
                on A.A's free expression than is essential to
                the furtherance of NISD's stated interests................................17

            3.  The challenged policies violate Plaintiffs Michelle
              Betenbaugh's and Kenney Arocha's rights to direct

the education and religious upbringing of their
son under the Fourteenth Amendment. ...................................................18

**B.  Plaintiffs Will Suffer Immediate Irreparable Injury
if a Temporary Restraining Order and Preliminary
Injunction are Not Issued.** ...................................................20

**C.  The Injury to Plaintiffs Far Outweighs Any Damage
the Injunction Purportedly Might Cause NISD.** ...................................................22

**D.  Granting the Temporary Restraining Order
Will be in the Public Interest.** ...................................................22

**IV. PRAYER FOR RELIEF AND CONCLUSION** ...................................................23

# TABLE OF CITATIONS

**Cases:**

*Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) ............................................................ 8, 9

*Alabama & Coushatta Tribes v. Trustees of Big Sandy Indep. Sch. Dist.*,
    817 F.Supp. 1319 (E.D. Tex. 1993) *remanded after federal*
    *RFRA enacted*, 20 F.3d 469 (5th Cir. 1994) ......................... 5, 7, 10, 11, 14, 16, 17, 19

*Balawajder v. Texas Dept. of Criminal Justice Institutional Div.*,
    217 S.W.3d 20 (Tex. App. 2006) ......................................................................... 8

*Brown v. Board of Ed. of Topeka, Shawnee County, Kan.*, 347 U.S. 483 (1954) ............... 20, 21

*Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995)
    *cert. denied*, 516 U.S. 1159 (1996) ......................................................................... 19

*Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001) ......................... 14, 15, 17

*Chalifoux v. New Caney Indep. Sch. Dist.*, 976 F. Supp. 659 (S.D. Tex. 1997) .. 5, 8, 10, 14, 15, 17

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) ............... 11, 13

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 38 (5th Cir. 1981) ..................... 20

*Diaz v. Collins*, 114 F.3d 69 (5th Cir. 1997) ......................................................... 7, 8, 16

*Elrod v. Burns*, 427 U.S. 347 (1976) ......................................................................... 20

*Employment Div., Dept. of Human Resources v. Smith*, 494 U.S. 872 (1990) ..................... 8

*Frazee v. Ill. Dept. of Emp. Security*, 489 U.S. 829 (1989) ........................................... 6

*Gallahan v. Hollyfield*, 516 F.Supp. 1004 (E.D. Va. 1981)
    *aff'd* 670 F.2d 1345 (4th Cir. 1982) ......................................................................... 7

*Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274 (5th Cir. 1996) ............................... 20

*Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972)
    *cert. Denied*, 409 U.S. 989 (1972) ......................................................................... 15

*Kikumura v. Hurley*, 242 F.3d 950 (10th Cir. 2001) .................................................... 11

*Knights of the Ku Klux Klan, Realm of La. v. East Baton Rouge Parish Sch. Bd.*,
    578 F.2d 1122 (5th Cir. 1978) ......................................................................... 4

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001) .......................................19

*Longoria v. Dretke*, 507 F.3d 898 (5th Cir. 2007) ...........................................................................7

*Lying v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439 (1988) ...........................9

*Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925) ...........................................................................19

*Planned Parenthood of Houston & Southeast Tex. v. Sanchez*,
    403 F.3d 324 (5th Cir. 2005) ....................................................................................................4

*Smithback v. Texas*, No. 3-05-CV-0578-BD., 2007 WL 241376 (Jan. 29, 2007) ...................8

*Spence v. Washington,* 418 U.S. 405 (1974) .....................................................................14, 15, 17

*Teterud v. Burns*, 522 F.2d 357 (8th Cir. 1975) ......................................................................7, 16

*Texas v. Johnson*, 491 U.S. 397 (1989) ............................................................................14, 15, 17

*Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707 (1981) ......................7

*Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503 (1969) .....................................14, 17

*United States v. O'Brien*, 391 U.S. 367 (1968) .............................................................................18

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) ..........................................23

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ........................................................11, 12

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) .................................................................................19, 20

*Woods v. Wright,* 334 F.2d 369 (5th Cir. 1964) .............................................................................21

**Statutes, Ordinances and Rules:**

TEX. CIV. PRAC. & REM. CODE § 110.001 ...........................................................4, 8, 10, 11

TEX. EDUC. CODE § 25.001 ....................................................................................................10

TEX. EDUC. CODE § 25.085 ....................................................................................................10

TEX. EDUC. CODE § 37.005(b) ................................................................................................3

TEX. EDUC. CODE § 37.006(l) .................................................................................................3

U.S. Const. Amend I ........................................................................................ 4

U.S. Const. Amend XIV, § 1 ......................................................................... 4

**Court Documents and Other Evidence:**

Advancement Project and The Civil Rights Project at Harvard University,
*Opportunities Suspended: The Devastating Consequences of Zero
Tolerance and School Discipline Policies* (2000) ..................................... 21

Associated Press, *Texas school superintendent allows Wiccan student to wear pentacle*
(Sept. 12, 2002) ........................................................................................ 15

Declaration of Dr. James Riding In .................................................... 3, 6, 10, 16

Email from J. Sniffin to M. Betenbaugh (undated) ........................................ 2

Email from Rhonda Crass to Fleming Terrell (Sep. 1, 2008) ......................... 3

Exemption Request Form ............................................................................... 6

Johanna Wald and Daniel J. Losen,
*Defining and Redirecting A School to Prison Pipeline, New Directions for Youth
Development*, No. 99, 11, 13 (Fall 2003) .................................................... 21

Letter from Jeanna Sniffin to Michelle Betenbaugh (Aug. 25, 2008) ........... 20

Level Three Appeal Notice 15 (Aug. 19, 2008) ............................................ 8

Needville Elementary School, October Activities & Pictures webpage ........... 16

Needville ISD Student Code of Conduct ....................................................... 20

NISD Dress Code ................................................................................... 2, 10

Paul Knight, *A Native American Family Fights Against Hair Length Rules*,
Houston Press (July 10, 2008) ........................................................ 13, 16, 17

Press Release, American Center for Law & Justice,
*ACLJ Secures Victory for Alabama Student to Wear Cross
Necklace in Public School* (May 1, 2000) ................................................ 15

Press Release, American Civil Liberties Union,
*Jewish Student Allowed to Wear Star of David Pendant as
Mississippi School Board Reverses Policy* (Aug. 24, 1999) ...................... 15

Texas Historical Commission, *The Indian Years Coloring Book* Legend ..................................16

Tomie DePaola, *The Legend of the Bluebonnet* (1996) ..................................16

Transcript of Level III Hearing (Aug. 20, 2008) ..................................13

Verified Complaint ..................................Passim

## I.      INTRODUCTION

A.A., a five-year-old American Indian child, and his parents, Michelle Betenbaugh and

Kenney Arocha ("Plaintiffs"), come before this Court to request relief from the Needville

Independent School District's ("NISD") dress code and punitive policies regarding A.A.'s hair,

which unconstitutionally burden his religious exercise and free expression.

A.A.'s uncut hair, which he keeps in two long braids, reflects and expresses his and his

family's American Indian religious beliefs and heritage.  NISD officials for months ignored, then

ultimately denied A.A.'s parents' request in anticipation of his entry into kindergarten that he be

exempted from NISD's dress code[1] (hereinafter the "Dress Code") which prohibits boys' hair

from covering the ear or touching the top of the collar.   Only after the family retained counsel

and appealed NISD Superintendent Curtis Rhodes' second denial of an exemption did the NISD

Board of Trustees ("the Board") finally acknowledge that A.A.'s religious beliefs are sincerely

held.  However, instead of simply allowing A.A. to wear his hair as he traditionally has, in two

braids, the Board crafted a unique "exemption"  to require A.A. to bind his thick hair into a

single, "tightly woven" braid, stuff it down his shirt every day, and face discipline should any

hair stray from the bind.  NISD has placed A.A. in In-School Suspension ("ISS"), the harshest

discipline for a child his age allowed by law, every day he has tried to attend kindergarten since

September 3, 2008 for noncompliance with its punitive policy.

As set forth more fully below, because Plaintiffs are substantially likely to prevail on the

merits of their argument that NISD's Dress Code, as applied to prohibit A.A.'s long braids, and

NISD's punitive policy violate the First and Fourteenth Amendments to the United States

Constitution and state law, because they are suffering irreparable harm every day that A.A. sits

---

[1]  The term "Dress Code" is used herein to refer only to those provisions of NISD's dress code that prohibit A.A. from having two long braids, outside of his clothing, at school.  Plaintiffs do not challenge the application of any other provision of the dress code to A.A.

in ISS, and because they meet the remaining criteria for injunctive relief, Plaintiffs respectfully request that this Court grant their Motion for a Temporary Restraining Order and Preliminary Injunction to enable A.A. to continue his education without compromising his beliefs or identity.

## II.   STATEMENT OF FACTS

A.A. is a kindergarten student at Needville Elementary School.  He has thick, wavy hair that, in keeping with his and his family's American Indian religious belief and traditions, has never been cut and is now approximately 13 inches long.   Verified Complaint ¶ 21.  A.A. keeps his hair neatly bound in two long braids, which reflect his religious beliefs and express his American Indian heritage and identity.  *Id.*

NISD's Dress Code prohibits long hair on boys at Needville Elementary.[2]  *See* NISD Dress Code, *available at* http://classroom.needvilleisd.com/webs/nes/dress_code.htm (attached to Verified Complaint as Ex. 1); Email from J. Sniffin to M. Betenbaugh (undated) (attached to Verified Complaint as Ex. 2, p. 15).  Despite his parents' repeated attempts, beginning in November 2007, to obtain an exemption for A.A. based on the family's American Indians religious beliefs and heritage, NISD officials refused to recognize their sincerely held religious beliefs before counsel became involved in July 2008.  *See* Verified Complaint ¶¶ 23-35 & exhibits cited therein.  On August 18, 2008, Superintendent Rhodes rejected a renewed exemption request that the family submitted through counsel.  *Id.* ¶ 40.  On August 20, 2008, after counsel presented the family's second appeal of Superintendent Rhodes' refusal, and just days before the first day of school, the NISD Board finally acknowledged A.A.'s right to an

---

[2] NISD's dress code also requires students' hair to be "clean, well groomed, and out of the eyes," prohibits boys from having "excessively full hair" that is over "two inches in fullness," and prohibits designs in the hair, multiple or crooked parts, untrimmed sideburns or sideburns longer than the middle of the ear lobe, "[e]xtreme hairdos of any nature," and "tufts or tails."  NISD Dress Code.  In addition, it places restrictions on student attire.  *Id.*

2

exemption from their Dress Code because of his religious beliefs about long hair.  *Id.* ¶ 45 & exhibits cited therein.

However, the "exemption" the Board pronounced for A.A. is not an accommodation so much as a castigation:  NISD would force A.A. to keep his hair in a single "tightly woven" 13-inch-long braid stuffed down his shirt at all times and to submit annually to the degrading process of justifying his religious beliefs to the NISD Board, with no certainty that they will be respected.  *Id.* ¶¶ 44-45 & exhibits cited therein.  As discussed below, requiring a child to effectively wear a hairshirt is inherently punitive and serves no purpose other than to pressure him into resenting or abandoning the American Indian beliefs and practices his parents have chosen to teach him.

Because Plaintiffs refuse to choose between their sincerely held beliefs and their child's education, and despite their extensive efforts (detailed in the Verified Complaint at ¶¶ 23-52 & exhibits cited therein) to resolve this issue prior to the start of school, NISD has since September 3, 2008 imposed the harshest discipline the law permits for a child of A.A.'s age by segregating him from his classmates and placing him in ISS.  *See* Tex. Educ. Code § 37.006(l); Verified Complaint ¶¶ 53-55.  Although state law limits suspensions to three school days, *see* Tex. Educ. Code § 37.005(b), Defendants have indicated through counsel that A.A. will remain in ISS indefinitely until he complies with their punitive policy, *see* Email from Rhonda Crass to Fleming Terrell (Sep. 1, 2008) (attached to Verified Complaint as Ex. 13)..

Defendants' actions violate A.A.'s constitutional and statutory rights to free exercise of religion and free expression, and his parents' rights to raise him according to their American Indian religion, heritage, and identity.   Plaintiffs suffer irreparable harm every day that A.A. remains segregated from his class in ISS and subject to NISD's Dress Code and punitive policies

concerning his hair.  For the reasons set forth below, Plaintiffs are entitled to immediate interim relief from NISD's policies.

Plaintiffs incorporate by reference all additional factual allegations contained in their Verified Complaint.

## III.   ARGUMENT

To obtain preliminary relief, Plaintiffs must demonstrate:   (1) a substantial likelihood of success on the merits, (2) a substantial threat they will suffer irreparable injury if an injunction is denied, (3) that the threatened injury outweighs any damage that an injunction might cause NISD, and (4) that an injunction will not disserve the public interest.  *See Planned Parenthood of Houston & Southeast Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).  Each factor must be present, but their relative importance will vary as they are applied on a "sliding-scale basis."  *See Knights of the Ku Klux Klan, Realm of La. v. East Baton Rouge Parish Sch. Bd.*, 578 F.2d 1122, 1125 (5th Cir. 1978) ("Where one or more of the factors is very strongly established, this will ordinarily be seen as compensating for a weaker showing as to another or others.").

For the reasons set forth below, all of the factors are satisfied in this case.  Plaintiffs are likely to succeed on the merits of their claims that NISD's policies and enforcement thereof violate Plaintiff A.A.'s rights to freely exercise his religion and to free expression under the First and Fourteenth Amendments, U.S. Const. amends. I, XIV § 1, and Texas' Religious Freedom Restoration Act ("TRFRA"), Tex. Civ. Prac. & Rem. Code ch. 110, and Plaintiffs Michelle Betenbaugh's and Kenney Arocha's right to direct A.A.'s education and religious upbringing under the Fourteenth Amendment, U.S. Const. amend XIV, § 1.  Moreover, Plaintiffs will suffer irreparable harm in the absence of injunctive relief because NISD has indefinitely imposed on A.A. the most severe discipline available for refusing to hide his American Indian

4

religion, heritage, and identity.  Because NISD would suffer no harm as a result of the requested relief, the balance of harms and the public interest weigh heavily in favor of granting the relief Plaintiffs request.

### A.    Plaintiffs Are Likely to Succeed on the Merits of their Constitutional and State Law Claims.

Clear precedent in this District and the neighboring Eastern District of Texas supports Plaintiffs' argument that they are highly likely to succeed on the merits of their claims.  On facts similar to those at issue here, the Eastern District found American Indian students and their parents likely to succeed on the merits of First and Fourteenth Amendment challenges to their school district's hair restrictions.  *Alabama & Coushatta v. Trustees of Big Sandy Indep. Sch. Dist.*, 817 F.Supp. 1319, 1328-33 (E.D. Tex. 1993) (long hair was exercise of American Indian religious beliefs, and expression "rife with symbolic meaning" in students' culture and tradition), *remanded after federal RFRA enacted*, 20 F.3d 469 (5th Cir. 1994) (finding likelihood of success increased by federal RFRA).  More recently, Judge Hittner here in the Southern District followed *Alabama & Coushatta* to enjoin a school district from punishing Catholic students for wearing rosaries outside of their clothing.  *Chalifoux v. New Caney Indep. Sch. Dist.* 976 F.Supp. 659, 664-67 (S.D. Tex. 1997) (rosaries were pure, symbolic speech and exercise of sincere religious belief under First Amendment).  *Alabama & Coushatta* and *Chalifoux* are directly on point and should guide this Court in finding that Plaintiffs are likely to succeed on the merits of their claims.

### 1.    The challenged policies impermissibly violate A.A.'s right to freely exercise his religion under the First Amendment and Texas' Religious Freedom Restoration Act

#### a.    As NISD has acknowledged, A.A. and his family are substantially motivated by sincere religious belief

Beginning in November 2007, Plaintiffs advised NISD that A.A. would be commencing kindergarten in Fall 2008; that he is American Indian and therefore has long hair; that his hair is a part of his American Indian religion, heritage, and identity; and accordingly that they were requesting an exemption from NISD's Dress Code  *See* Verified Complaint ¶¶ 23-29, 37-43 & exhibits cited therein.  NISD first ignored Plaintiffs' exemption request, then demanded evidence of their sincerely held religious beliefs beyond what is permitted by law.  *See id.*; *compare* Exemption Request Form (attached to Verified Complaint as Ex. 2, pp. 17-19) (requiring documentary evidence of Plaintiffs' membership in "a recognized church or religious organization whose tenets and practices conflict" with NISD's policies) *with Frazee v. Ill. Dept. of Emp. Security*, 489 U.S. 829, 831 (1989) (religious belief need not "be found in a tenet or dogma of an established religious sect" for First Amendment protection).  Days before school began, the NISD Board finally acknowledged these sincerely held religious beliefs by granting A.A. what they deemed an exemption from all district policies that would require him to cut his hair.  *See* Verified Complaint ¶¶ 44-45 & exhibits cited therein.

The Board's conclusion was unavoidable in the face of evidence Plaintiffs provided of the religious nature and sincerity of A.A.'s beliefs concerning his hair.  Beliefs concerning the spiritual and personal significance of hair, including restrictions on cutting men's hair, are widespread among American Indian groups.  *See* Declaration of Dr. James Riding In, attached to Verified Complaint as Ex. 3.  Such beliefs need not "be found in a tenet or dogma of an established religious sect" to receive First Amendment protection."  *Frazee v. Ill. Dept. of Emp. Security*, 489 U.S. 829, 831 (1989) (internal quotation marks omitted).  They need only be motivated by "an honest conviction that [cutting one's hair is] forbidden by his religion," regardless of whether that religion is "acceptable, logical, consistent, or comprehensible to

others." *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714-15 (1981).

Courts, including the Fifth Circuit, have repeatedly recognized American Indian beliefs

concerning hair as "religious" within the meaning of the First Amendment and federal statutes

designed, like TRFRA, to protect the same free exercise interests.[3] *See, e.g.*, *Diaz v. Collins*, 114

F.3d 69, 73 & n.18 (5th Cir. 1997) ("[T]he Native American custom regarding long hair, while in

some part cultural, has strong religious implications."); *Warsoldier v. Woodford*, 418 F.3d 989,

994-96 (9th Cir. 2005) (prison's short hair requirement substantially burdened American Indian

inmate's free exercise of religion); *Teterud v. Burns*, 522 F.2d 357, 359-60 (8th Cir. 1975)

(American Indian inmate's wearing of long braided hair was religious and entitled to First

Amendment protection); *Alabama & Coushatta*, 817 F. Supp. at 1329 ("The Native American

Indian movement...is certainly a religion."); *Gallahan v. Hollyfield*, 516 F.Supp. 1004, 1006

(E.D. Va. 1981), *aff'd*, 670 F.2d 1345 (4th Cir. 1982) (American Indian inmate's long hair was

exercise of religious belief).

A.A. and his parents provided NISD with ample evidence of their sincerity.  Among other

things, Plaintiffs informed NISD that both A.A. and Mr. Arocha are of American Indian descent

and believe that their long hair has spiritual meaning and should be cut only to mark

---

[3] These cases hold that American Indian beliefs concerning long hair are religious in nature and are substantially burdened by regulations requiring short hair.  The Fifth Circuit's decisions in *Diaz* and *Longoria v. Dretke*, 507 F.3d 898 (5th Cir. 2007), to nevertheless permit such regulations in the prison context are not controlling in the instant case.  Applying the federal RFRA, *Diaz* found such regulations were the least restrictive means of furthering a compelling interest in prison security in light of Congress's intent that courts "continue to extend substantial deference to prison officials in legitimate security matters."  *Diaz*, 114 F.3d at 72-73.  *Dretke* reached the same result under the Religious Land Use and Institutionalized Persons Act, which also requires deference to prison administrators.  *Diaz*, 507 F.3d 902-904.  The types of security risks and the means of avoiding them in prisons differ substantially from those in A.A.'s elementary school.  *See Alabama & Coushatta*, 817 F. Supp. at 1333 ("Undoubtedly, a prison is a much more restrictive environment than are public schools.  Surely, prison wardens have a far greater interest in regulating the dress and grooming of inmates than do principals and school boards in regulating that of…students.") (internal citation omitted)  Another circuit recently held that a ban on long hair is not the least restrictive means of furthering prison security with respect to American Indian inmates in minimum security facilities.  *See Warsoldier*, 418 F.3d at 997-1001 ("Given the reduced security pressures at…minimum security facilities, the least restrictive means in a maximum security prison may not be identical to what is required for a minimum security facility.").

significant events like the death of a loved one; that for at least ten years Mr. Arocha has been studying and practicing American Indian religious beliefs and has not cut the hair on the crown of his head; and that Mr. Arocha has taught his religious beliefs to A.A., who has never had his hair cut. *See* Level Three Appeal Notice 15 (Aug. 19, 2008) (attached to Verified Complaint as Ex. 2).

Accordingly, as NISD recognized by granting what it considers an exemption, A.A.'s refusal to cut his hair is substantially motivated by sincere religious belief and entitled to protection under the First Amendment and TRFRA. *See Chalifoux*, 976 F. Supp. at 670; Tex. Civ. Prac. & Rem. Code § 110.001.

> **b.   NISD's requirement that A.A. wear his hair stuffed down his shirt, face discipline should it stray, and undergo the humiliating exercise of re-proving his sincerity to the NISD Board yearly substantially burdens his free exercise of religion**

Once sincerity has been established, both the First Amendment and TRFRA restrict NISD's ability to substantially burden A.A.'s free exercise of religion. The Fifth Circuit has defined a substantial burden on religious exercise[4] as a policy or action that "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious belief." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Such pressure is exerted when the government "forces an adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs," or "influences him to act in a way that violates his religious beliefs." *Adkins*, 393 F.3d at 570. In

---

[4] *Adkins* interpreted the meaning of "substantial burden" under the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* RLUIPA is a federal counterpart of TRFRA, and state and federal courts have looked to it for guidance interpreting TFRFA. *See Balawajder v. Texas Dept. of Criminal Justice Institutional Div.*, 217 S.W.3d 20, 26 (Tex. App. 2006); *Smithback v. Texas*, No. 3-05-CV-0578-BD., 2007 WL 241376, at *2 (Jan. 29, 2007) (applying *Adkins* definition of substantial burden under TRFRA). Both statutes were designed to reinstate the strict scrutiny applied to First Amendment free exercise claims prior to the Supreme Court's decision in *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872 (1990). *See Balawjder*, 217 S.W.3d at 26 n.4; *Adkins*, 393 F.3d at 566-67 (discussing federal legislative response to *Smith*).

applying this test, the Court must take into account the specific factual context of this case. *Adkins*, 393 F.3d at 571.

A free, public education is not only a benefit generally available to all Texas children, it is obligatory for all children who, like A.A., have been enrolled in school. *See* Texas Educ. Code §§ 25.001, 25.085.   By requiring boys to have short hair, NISD's Dress Code imposes a substantial burden on A.A. by forcing him to choose between the full benefit of a free, public education and following his religious beliefs. *See Adkins*, 393 F.3d at 570.

The punitive policy NISD adopted as an "exemption" to its Dress Code, however, undoubtedly has a "tendency to coerce [A.A.] into acting contrary to [his] religious belief." *Lying v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439, 450-51 (1988) (no substantial burden under First Amendment absent tendency to coerce).   It does not "merely prevent[] [A.A.] from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." *Adkins*, 393 F.3d at 570.   To the contrary, by requiring A.A. to attend school wearing, essentially, a hairshirt at all times and to justify his religious beliefs annually to the NISD Board, the punitive policy "influences [A.A.] to act in a way that violates his religious beliefs," in order to access the free, public education to which he entitled under state law, thus imposing a substantial burden. *Adkins*, 393 F.3d at 570.

Under the punitive policy, A.A. may rejoin his kindergarten class only if he literally stuffs the evidence of his American Indian religion, heritage, and identity down his shirt and submits to the degrading process of justifying his religious beliefs to NISD every year.   This policy can serve no purpose other than to make A.A. feel degraded, embarrassed, anxious, and physically uncomfortable for practicing his religion.   It is particularly onerous when viewed in the context of the harsh assimilative tactics—including removal of American Indian children to

boarding schools where boys' hair was forcibly cut short—that lead many American Indians to abandon their religious customs or deny their American Indian identity altogether during the 19th and 20th centuries.  *See* Riding In Decl. ¶¶ 4-7 .  Applied to A.A., this punitive policy would similarly influence the five-year-old to resent or abandon his own religion, heritage, and identity.

        **c.**  **Neither the application of NISD's Dress Code, nor NISD's punitive policy for A.A., can survive the heightened scrutiny required by TRFRA and the First Amendment.**

TRFRA and the First Amendment require heightened scrutiny of NISD's Dress Code as applied to A.A., and of NISD's punitive policy for A.A..  NISD cannot meet its resulting burden of showing that enforcing these policies against A.A. is more than reasonably related to, or the least restrictive means of, furthering its interests in "promoting hygiene, instilling discipline, preventing disruption, avoiding safety hazards and asserting authority."  NISD Dress Code.

Under TRFRA, NISD can enforce its Dress Code against A.A. only if doing so is "the least restrictive means of furthering" a "compelling government interest."  Tex. Civ. Prac. & Rem. Code § 110.003(a)-(b).  The *Chalifoux* and *Alabama & Coushatta* courts also applied heightened scrutiny to students' First Amendment free exercise claims, where, as here, they were made along with other First and Fourteenth Amendment claims.  *See Chalifoux*, 976 F. Supp. at 671 (on "hybrid" free exercise and free speech claim, court "must perform a balancing test to determine whether the school's regulation places an undue burden on Plaintiffs' religious exercise and whether the regulation bears more than a reasonable relation to [the district's] stated objective") (internal quotation marks omitted); *Alabama & Coushatta*, 817 F. Supp. at 1332 ("Where either parental interests or free speech are asserted in conjunction with a free exercise claim, something more than a mere reasonable relation to some purpose within the competency

of the State is required.") (internal quotation marks and citations omitted).  As the *Alabama &*
*Coushatta* court recognized, there are less restrictive means of achieving NISD's stated interests
than enforcing its Dress Code provisions on hair in contravention of a student's religious beliefs.
*See Alabama & Coushatta*, 817 F.Supp. at 1330-34 (noting less restrictive means have been
adopted even in prison context); *see also, e.g.*, *Warsoldier*, 418 F.3d at 998-1001 (banning long
hair for male inmates was not least restrictive means of achieving minimum security prison's
security interests, where other means such as religious exemption policy were less restrictive).
Accordingly, enforcing NISD's Dress Code against A.A.[5] would violate his free exercise rights.

TRFRA also requires NISD to show that its punitive policy is the least restrictive means of
furthering its stated interests.  Tex. Civ. Prac. & Rem. Code § 110.003(a)-(b).  Likewise, the First
Amendment requires strict scrutiny because the punitive policy is *not* a neutral law of general
applicability—the only purpose it serves is to suppress A.A.'s religious and expressive conduct,
and it is applicable to no other student.  *See Church of the Lukumi Babalu Aye, Inc. v. City of*
*Hialeah*, 508 U.S. 520, 531-532 (1993) ("[A] law that is neutral and of general applicability need
not be justified by a compelling governmental interest even if the law has the incidental effect of
burdening a particular religious practice…. [but a] law failing to satisfy these requirements must
be justified by a compelling governmental interest and must be narrowly tailored to advance that
interest.") (internal citations omitted).

NISD cannot make the requisite showing that its punitive policy is the least restrictive
means of furthering its interests in hygiene, discipline, avoiding disruption, safety and authority.

---

[5] Under TRFRA, NISD's enforcement of its Dress Code against A.A. in particular, not the general enforcement of
the dress code for students with no religious conflict, must be the least restrictive means of achieving NISD's
interests.  *See* Tex. Civ. Prac. & Rem. Code § 110.003(b) (government must "demonstrate[] that the application of
the burden *to the person*" meets least restrictive means test); *see also Kikumura v. Hurley*, 242 F.3d 950, 962 (under
similar language in federal RFRA, "a court does not consider the [policy] in its general application, but rather
considers whether there is a compelling government reason, advanced in the least restrictive means, to apply the
[policy] to the individual claimant")

Indeed, NISD's policy is contrary to these interests.  It is less, rather than more, hygienic to stuff one's hair down one's shirt, especially given the heat in the Houston area and the perspiration caused by exertion for any normal kindergartener.  Any proposition that long hair is inherently disruptive, dangerous or contrary to student discipline or school authority is farcical, and disproven by the fact that long braids are apparently not prohibited for girls.  *See Warsoldier*, 418 F.3d at 1000 (where prison's asserted interests in health and security "apply equally to male and female inmates," but only males were required to have short hair, prison's interests do not "justify the policy, and, more importantly,…the hair length restriction is not the least restrictive means to achieve the same compelling interests").

NISD's punitive policy is, however, highly likely to disrupt the learning environment for both A.A. and his classmates.  Having his hair stuffed down his shirt is likely to render A.A. less able to concentrate on school work, due to both the resulting physical and personal discomfort and the anxiety attendant to NISD's policy that he will be disciplined should any of his hair stray from the braid or from under his shirt.   Moreover, A.A.'s teachers will be obliged to take time away from class to advise him of non-compliance and impose discipline for violating the punitive policy.

In addition, it is counterproductive to attempt to instill discipline or assert authority by imposing a rule too onerous for a five-year-old to follow.  Inevitably over the course of a kindergartener's daily activities, A.A.'s braid will become less than "tightly woven" or slip out from underneath his shirt, or stray pieces of his wavy hair will fall from behind his ears, all in violation of the punitive policy.  Whatever motivation A.A. might have to comply, despite his degradation, embarrassment, and physical discomfort, with the punitive policy would be undermined by the impossibility of the task.

12

NISD's imposition of these unnecessary and counterproductive restrictions on A.A. makes plain that the policy serves no purpose other than to punish A.A. for practicing and expressing his religion.  *See Hileah*, 508 U.S. at 538 ("It is not unreasonable to infer, at least when there are no persuasive indications to the contrary, that a law which visits gratuitous restrictions on religious conduct seeks not to effectuate the stated governmental interests, but to suppress the conduct because of its religious motivation.") (internal quotation marks omitted); *see also* Transcript of Level III Hearing at 19-20 (Aug. 20, 2008) (attached to Verified Complaint as Ex. 9) ("Although *I disagree with the law presented in this case and understand and support why Mr. Rhodes made the decision that he made*, I move that the Board…grant A.A. an exemption to the grooming code with the following provisions: [describing punitive policy].") (emphasis added); *id.* at (recognizing that punitive policy "modified the relief [Plaintiffs] requested" from NISD); Paul Knight, *A Native American Family Fights Against Hair Length Rules*, Houston Press, July 10, 2008 (attached to Verified Complaint as Ex. 5) (reporting NISD Superintendent Rhodes' comments that Plaintiffs "want[ed] to move in, yet they want to change this part [of NISD's Dress Code] to fit how they practice or what they believe in," and that "no one is asking you to move to Needville and have these opinions [on student hair and dress] invoked on you.").

Because NISD's Dress Code and the punitive policy adopted for A.A. substantially burden his free exercise and because NISD cannot meet the heightened scrutiny imposed under the First Amendment and TRFRA, Plaintiffs are substantially likely to succeed on the merits of their free exercise claims.

**2. NISD's policies violate A.A.'s right to free expression under the First Amendment.**

Plaintiffs are also substantially likely to prevail on their claim that the NISD Dress Code

and punitive policy violate the First Amendment's prohibition on restricting free expression.

Students do not "shed their constitutional rights to freedom of speech or expression at the

schoolhouse gate." *Tinker v. Des Moines Indep. Sch. Dist.*, 393 U.S. 503, 508 (1969) (finding

students' right to wear armbands in protest of Vietnam War was "akin to pure speech" and

entitled to First Amendment protection).  A.A.'s long braids, like the black armbands in *Tinker*,

the rosaries in *Chalifoux*, and the students' long hair in *Alabama & Coushatta*, are symbolic

expression entitled to First Amendment protection.  NISD cannot provide sufficient grounds to

justify silencing this expression.  Accordingly, the application of NISD's Dress Code to prohibit

A.A.'s long braids and NISD's punitive policy violate the First Amendment.

> **a.  A.A.'s long braids are protected by the First Amendment because they are
> intended and likely to be understood as an expression of his American Indian
> religion, heritage, and identity.**

The Supreme Court has held that conduct amounts to expression protected by the First

Amendment if the actor has an "intent to convey a particularized message" and the "likelihood

[is] great that the message [will] be understood by those who view[] it.'" *Texas v. Johnson*, 491

U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)).  In applying

this *Spence*/*Johnson* test, the Fifth Circuit "look[s] to the particular activity, combined with the

factual context and environment in which it was undertaken." *Canady v. Bossier Parish Sch. Bd.*,

240 F.3d 437, 440 (5th Cir. 2001).

The Fifth Circuit applies the *Spence*/*Johnson* test to evaluate students' use of their

appearance as a form of expression.  *See Canady*, 240 F.3d at 440-441 (students' "choice to wear

clothing as a symbol of an opinion or cause is undoubtedly protected under the First Amendment

if the message is likely to be understood by those intended to view it") (citing *Johnson*, 491 U.S.

at 404; *Spence*, 418 U.S. at 410-11).  Accordingly, student attire can "function[] as pure speech"

and can "symbolize ethnic heritage, religious beliefs, and political and social views." *Id.*

Likewise, where the *Spence*/*Johnson* test it met, a student's hair may convey a protected

message.[6] *Id.* at 440 n.1.

Applying the *Spence*/*Johnson* test, the Southern District has held that students engage in "a

form of religious expression protected under the First Amendment" when they wear religious

symbols intended to "communicate their…faith to others." *Chalifoux*, 976 F. Supp. at 665

(finding great likelihood observers would understand, from rosaries students' wore, that students

were Christian). Elsewhere, students have repeatedly succeeded in challenging schools' attempts

to force them to hide the evidence of their religious faith. *See, e.g.*, Press Release, American

Center for Law & Justice, *ACLJ Secures Victory for Alabama Student to Wear Cross Necklace in

Public School* (May 1, 2000) *at* https://www.aclj.org/news/read.aspx?ID=238 (school district

agreed to permanent injunction permitting student to wear cross necklace openly after she sued

district for requiring her to hide cross under her shirt); Press Release, American Civil Liberties

Union, *Jewish Student Allowed to Wear Star of David Pendant as Mississippi School Board

Reverses Policy* (Aug. 24, 1999) *at* http://www.aclu.org/studentsrights/religion/

12793prs19990824.html (school board reversed policy after Jewish student sued for being told to

hide Star of David pendant under his shirt); Associated Press, *Texas school superintendent

allows Wiccan student to wear pentacle* (Sept. 12, 2002) (attached hereto as Ex. 1)

(Superintendent reversed decision that Wiccan student must hide pentacle pendant under shirt to

return to class from suspension).

---

[6] *Canady* revisited and rejected the Fifth Circuit's Vietnam-era decision in *Karr v. Schmidt*, 460 F.2d 609, 613 (5th Cir.), *cert. denied*, 409 U.S. 989 (1972), that established a "per se rule that [student hair length] regulations are constitutionally valid." *See Canady*, 240 F.3d at 440 n.1. In reviewing *Karr*, the *Canady* court noted that if "hair style never warrants First Amendment protection…then every choice of clothing, regardless of the intent of the wearer to communicate a particularized message, would not qualify as protected speech." *Id.* The *Canady* court "reject[ed] this analysis…in favor of the contemporary test for assessing expressive conduct outlined in *Spence* and *Johnson*." *Id.*

Like the religious symbols discussed above, "wearing of long hair by Native American students is a protected expressive activity" because "[l]ong hair in Native American culture and tradition is rife with symbolic meaning." *Alabama Coushatta*, 817 F. Supp. at 1333-34; *see also* Riding In Decl. ¶ 2 (noting religious and cultural significance of "[l]ong hair, whether worn in braids, a ponytail, or loose"); *Diaz v. Collins*, 114 F.3d 69, 73 & n.18 (5th Cir. 1997) (long hair has "strong significance...in Native American belief); *Teterud v. Burns*, 522 F.2d 357, 360 (8th Cir. 1975) (American Indian's wearing of long braided hair was "matter of tradition" and protected religious practice).

A.A. intends for his long braids to communicate his American Indian religion, heritage, and identity to others. *See* Verified Complaint ¶ 21; *see also* Paul Knight, *A Native American Family*, *supra* ("'I'm an Indian,' [A.A.] says. 'How long my hair is, it tells me how long I've been here.'") . His message is likely to be understood in light of widespread depiction of American Indians as having long braided or bound hair. *See, e.g.*, Texas Historical Commission, *The Indian Years Coloring Book*, *available at* http://www.tpwd.state.tx.us/publications/kids/ (attached hereto as Ex. 2) (depicting American Indians with long hair bound on each side of head); Tomie DePaola, *The Legend of the Bluebonnet* (1983) (excerpt attached hereto as Ex. 3) (depicting American Indians with long braids bound on each side of head); Needville Elementary School, October Activities & Pictures webpage 3, http://classroom.needvilleisd.com/webs/nes/ october_activities_and_pictures.htm (cached Jul. 18, 2008) (attached hereto as Ex. 4) (depicting female student dressed as American Indian with long braids on each side of her head) . Any doubt that observers in Needville Elementary School will understand A.A.'s message has been eliminated by the publicity surrounding NISD's longstanding refusal to allow A.A. to express his American Indian

religion, heritage, and identity through his long braids. *See, e.g.*, Paul Knight, *A Native American Family, supra*; *see generally Canady*, 240 F.3d at 440 (requiring court to consider particular factual context in applying *Spence*/*Johnson* test). Accordingly, A.A.'s long braids are religious and symbolic expression protected under the First Amendment. NISD's requirement that he wear only one braid and hide its length under his shirt silences this expression.

> **b. NISD's policies prohibiting A.A.'s long braids violate the First Amendment because the braids do not interfere with school operations, and because the policies place a greater restriction on A.A.'s free expression than is essential to the furtherance of NISD's stated interests.**

NISD's general and punitive policies prohibiting A.A.'s braids should, like the policies prohibiting long hair in *Alabama & Coushatta* and the wearing of rosaries in *Chalifoux*, be analyzed under the *Tinker* test for restrictions on conduct that is "akin to pure speech." *Tinker*, 393 U.S. at 505; *see also Alabama & Coushatta*, 817 F. Supp. at 1333-34; *Chalifoux*, 976 F. Supp. at 666. Under the *Tinker* test, NISD may restrict A.A.'s expression only if it can show that his long braids "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school," *Tinker*, 393 U.S. at 508 (internal quotation marks omitted). There is no reason to believe that A.A.'s braids will cause any such interference. Indeed, he attended class with long braids for five days without incident. The only interference that has resulted from A.A.'s braids is NISD's interference with his education by placing him in ISS. Accordingly, NISD's general grooming policies are unconstitutional to the extent they are applied to prohibit his long braids. NISD's punitive policy, in turn, is unconstitutional on its face because it prohibits A.A. from wearing two braids and requires him to hide his long hair altogether by stuffing it down his shirt.

Even if A.A.'s long braids are considered "speech-plus-conduct" subject to the less

restrictive standards set out in *United States v. O'Brien*, 391 U.S. 367 (1968), NISD's policies remain unconstitutional.  A restriction of expression survives the *O'Brien* test only if (1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest that is (3) unrelated to the suppression of free expression; and (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.  *O'Brien*, 391 U.S. at 377 (1968).  The punitive policy runs afoul of the *O'Brien* test because, by requiring A.A. to join and stuff the braids that express his Native American religion, heritage, and identity down his shirt at all times, it plainly relates to the suppression of his free expression.  Furthermore, as discussed in the previous section, neither the punitive policy nor application of NISD's general policies to prohibit A.A.'s long hair do much if anything to further NISD's asserted interests in hygiene, discipline, avoiding disruption, safety, and authority.  Neither is there any basis to conclude that one braid is more hygienic or disciplined, less disruptive, safer, or more respectful of authority than two braids.  Accordingly, NISD's policies place a far greater restriction on A.A.'s free expression than is essential to further NISD's asserted interests, in violation of the First Amendment.

> **3.  The challenged policies violate Plaintiffs Michelle Betenbaugh's and Kenney Arocha's rights to direct the education and religious upbringing of their son under the Fourteenth Amendment.**

Plaintiffs Ms. Betenbaugh and Mr. Arocha have worked to raise their son to practice and be proud of his American Indian religion, heritage, and identity.  NISD's punishment of A.A. for practicing his religion threatens to irrevocably undermine their efforts by causing A.A. to become ashamed of, to resent or even to abandon what his parents have taught him.  The risk of these harms increases with every day that A.A. is punished for practicing and expressing his

American Indian religion, heritage, and identity.[7]  Thus, like the hair-length policy in *Alabama & Coushatta*, NISD's punitive policy violates Ms. Betenbaugh's and Mr. Arocha's "firmly established" right to direct A.A.'s religious upbringing.  *See* 817 F.Supp. at 1334 (citing *Wisconsin v. Yoder*, 406 U.S. 205 (1972); *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)).  As applied to prohibit A.A.'s long braids, NISD's Dress Code also violates Ms. Betenbaugh's and Mr. Arocha's right to direct A.A.'s education and religious upbringing.  *Id.*

The Fifth Circuit has recognized that *Yoder* requires a "stricter standard than rational basis review" where, as here, "parental interests [are] combined with free exercise interests." *Littlefield v. Forney Indep. Sch. Dist*, 268 F.3d 275, 290 (5th Cir. 2001) (applying rational basis review where school uniform policy contained religious exception); *see also Yoder*, 406 U.S. at 233 ("[W]hen the interests of parenthood are combined with a free exercise claim of the nature revealed by this record, more than merely a reasonable relation to some purpose within the competency of the State is required to sustain the validity of the State's requirement under the First Amendment.").  The interests NISD purports to advance by applying the challenged policies to A.A. do not justify the significant burden imposed upon his parents'.  As discussed above, forcing A.A. to cut or hide his long braids does not further any of NISD's interests in "promoting hygiene, instilling discipline, preventing disruption, avoiding safety hazards [or] asserting authority," and thus does not bear more than a reasonable relation to NISD's asserted interests.  NISD's interference with Mr. Arocha's and Ms. Betenbaugh's rights to direct A.A.'s education and religious upbringing is therefore unconstitutional.

---

[7] Plaintiffs do not seek to prevent NISD from exposing A.A. to ideas or information that conflict with the religious beliefs his parents are teaching him.  Courts have correctly found that parents' rights are not implicated in such cases.  *See, e.g., Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533-34 (1st Cir. 1995), *cert. denied*, 516 U.S. 1159 (1996) .  Here, by contract, NISD is directly interfering with Ms. Betenbaugh's and Mr. Arocha's ability to teach A.A. their religion by punishing A.A. for its exercise.

**B. Plaintiffs Will Suffer Immediate Irreparable Injury if a Temporary Restraining Order and Preliminary Injunction are Not Issued.**

A.A. and his parents are suffering and will suffer further actual, imminent, and irreparable harm absent an injunction.

"It is well settled that the violation of Constitutional rights for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir. 1996) (citing *Elrod*, 427 U.S. at 373).   NISD's continued suspension of A.A. for exercising his constitutional and statutory rights to free exercise and free expression of his American Indian religion, heritage, and identity therefore constitutes irreparable injury.  It also irreparably injures Plaintiffs Michelle Betenbaugh and Kenney Arocha by violating their constitutional rights to direct A.A.'s education and religious upbringing.

In addition, A.A.'s placement in ISS is expressly intended as punishment.  *See* Letter from Jeanna Sniffin to Michelle Betenbaugh (Aug. 25, 2008) (attached to Verified Complaint as Ex. 12) (threatening to "discipline" A.A. with ISS for attending school with two braids worn outside his clothing).  While in ISS, A.A. is denied appropriate educational and developmental opportunities.  He is not permitted to learn or engage in social play with his kindergarten classmates, or to participate in any extracurricular activities.  *See* Needville ISD Student Code of Conduct at 10 (attached hereto as Ex. 5).  A.A. understands that he is being treated differently and segregated from his classmates because of the long braids he has in accordance with his American Indian religion, heritage, and identity.  *See* Verified Complaint ¶ 55.  When Ms. Betenbaugh talks to A.A. about school while tucking him in each night, he often cries and tells her he is sad to be separated from his classmates.  *See id.* ¶ 57; *cf. Brown v. Board of Ed. of*

*Topeka, Shawnee County, Kan.*, 347 U.S. 483, 494 (1954) ("To separate [children] from others of similar age and qualifications solely because of their race generates a feeling of inferiority as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone.").

Coming as they do at such a formative time in his social development and educational career, these hardships have a damaging effect on A.A.'s self-image, attitude toward education, and ability to interact with his peers.  In addition to the stigma and isolation associated with this form of punishment, suspension can irreparably harm a child's academic performance, increasing the risk of failure, dropping out, and incarceration.  *See* Johanna Wald and Daniel J. Losen, *Defining and Redirecting A School to Prison Pipeline, New Directions for Youth Development*, No. 99, 11, 13 (Fall 2003); Advancement Project and The Civil Rights Project at Harvard University, *Opportunities Suspended: The Devastating Consequences of Zero Tolerance and School Discipline Policies*, 8, 11 (2000).  The Fifth Circuit has recognized that suspension or expulsion can cause irreparable injury necessitating preliminary injunctive relief.  *See Woods v. Wright*, 334 F.2d 369, 375 (5th Cir. 1964) (reversing denial of preliminary injunctive relief to a child who was expelled from school in retaliation for participating in public demonstration against segregation), The longer A.A. is punished, segregated from his classmates, and denied socialization for exercising and expressing his American Indian religion, heritage, and identity, the greater his injury becomes.

Finally, Plaintiffs Michelle Betenbaugh and Kenney Arocha also face continued irreparable harm as their constitutional right to direct A.A.'s education and religious upbringing is violated.  Every day A.A. goes to school, his parents face additional harm from the emotional burden of sending their child to be punished and the increased risk that their efforts to raise him

to practice and be proud of his American Indian religion, heritage, and identity will be irrevocably compromised.

**C.   The Injury to Plaintiffs Far Outweighs Any Damage the Injunction Purportedly Might Cause NISD.**

Since September 3, A.A. has remained in ISS, being punished because of who he is and what he believes.  During this time, A.A.'s only companion was another kindergartener who was accused of threatening to shoot someone.  *See* Verified Complaint ¶ 56.  That child returned to class after three days, but A.A.'s punishment is unending.  His constitutional and statutory rights are violated every day he remains in ISS.  Worse, his education and self-esteem, and his parents' ability to teach him to practice and express his American Indian identity and beliefs with pride, are compromised more with every passing day.  These injuries to Plaintiffs are severe and ongoing, and threaten to increase with time.  In contrast, NISD would suffer no injury were this punishment ended and A.A. returned to the classroom.  As detailed above, A.A.'s two long braids pose no threat to NISD's interests in hygiene, discipline, avoiding disruption, safety, and asserting authority.  The absence of harm to NISD is demonstrated by the fact that A.A. attended class with his hair in two braids outside of his clothing for the first full week of school without incident.  Far from harming NISD, the requested relief would save NISD the mounting and unnecessary expense of paying an additional full-time teacher to oversee A.A. in ISS every day.  *See* Verified Complaint ¶ 54.  The balance of harms to Plaintiffs and NISD therefore weighs heavily in favor of granting preliminary injunctive relief.

**D.   Granting the Temporary Restraining Order Will be in the Public Interest**

The requested relief is in the public interest.  Protecting the freedom of religion and expression is at the very core of the Constitution. The public's interest in vindicating the values set forth in the First Amendment mitigates in favor of a judicial intervention to prevent NISD

officials from curtailing A.A.'s religious freedom and expression and limiting the rights of his

parents to direct his religious upbringing.

In contrast, no public interest is served by denying A.A. and his parents their constitutional

rights. *See, e.g., Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997).

Moreover, NISD has apparently incurred the expense of paying a retired teacher to supervise

A.A.'s ISS classroom, in which he is most frequently the sole pupil.  Prohibiting Defendants

from disciplining A.A. in violation of his and his parents' constitutional and statutory rights thus

serves the interests of all taxpayers and students residing in the district.

## IV.    PRAYER FOR RELIEF AND CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court issue a

temporary restraining order and preliminary injunction prohibiting NISD and its officials,

employees, agents, assigns and all those working in concert with them, from disciplining A.A. in

any way that violates his rights to free exercise of religion or free expression, including by

disciplining him for attending school or school events, either at home or away, including the bus,

with his hair in two long braids, one on either side of his head, worn outside of his clothing.


Dated:  October 2, 2008                    Respectfully submitted,


                                  _____/s/_____
                                  Lisa Graybill
                                  *Attorney-in-Charge*
                                  Texas Bar No. 24054454
                                  Southern District Bar No. 784838
                                  lgraybill@aclutx.org

                                  Fleming Terrell
                                  Texas Bar No. 24063031
                                  Southern District Bar No. 933603
                                  fterrell@aclutx.org

AMERICAN CIVIL LIBERTIES UNION
            FOUNDATION OF TEXAS
P.O. Box 12905
Austin, TX 78711
Phone:  (512) 478-7300, ext. 116 and 128
Fax:  (512) 478-7303

Daniel Mach
District of Columbia Bar No.461652
dmach@aclu.org
AMERICAN CIVIL LIBERTIES UNION
            FOUNDATION
PROGRAM ON FREEDOM OF RELIGION
            AND BELIEF
915 15th Street, NW
Washington, DC 20005
Phone:  (202) 675-2330
Fax:  (202) 546-0738
*Pro hac vice application pending

**Attorneys for Plaintiffs**

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I certify that on October 8, 2008 a true copy of the foregoing document was filed in the above-entitled action with the Clerk of the Court using the ECF system, which will send notification of this filing to the following counsel of record:

Jeffrey Lee Hoffman
Henslee Fowler et al
3200 Southwest Freeway, Ste 1200
Houston, TX 77027
Tel: 713-552-1693
Fax: 281-342-7001
Email: jhoffman@hensleeschwartz.com

/s/
Lisa Graybill